VOELKEL ET AL. *v.* TOHULKA ET AL.

[No. 29,530. Filed April 2, 1957. Rehearing denied May 8, 1957.]

*Maurice M. Tulchinsky* and *George Sands,* both of South Bend, for appellants.

*Louis M. Hammerschmidt* and *Hammerschmidt & Johnson,* (of counsel) all of South Bend, for appellees.

ARTERBURN, J.—This case is here on transfer from the Appellate Court. It is a case in which a soldier, on furlough, met his sister, Helen Augusta Voelkel, hereafter referred to as appellant, and a brother, Randall, in an attorney's office to make a will, and to arrange for the disposition and distribution of the proceeds of his life insurance contract under the National Service Life Insurance Act of 1940, 38 U. S. C. A. §801. At the time he had already taken out insurance in the amount of $1500. He stated at the meeting that in event of his death he wanted his property, including his insurance, to be divided equally among his sisters and brothers (except Randall). He further asked the appellant if she were designated as beneficiary of his insurance if she would accordingly distribute it. To this she agreed. At the time a brother, George, was designated as bene-

ficiary of the insurance. The will was made and contained the following statement:

"All my insurance, meaning the proceeds of any policies upon my life, and including United States Government insurance, shall be paid to those entitled to my residuary estate under this item of my Will, all provisions in beneficiary clauses to said policy or policies to the contrary, notwithstanding."

Later, the soldier brother secured $8500 more such insurance, making a total of $10,000 on his life, and had his sister, the appellant, named sole beneficiary of all the insurance. He was killed in action at Desau, Germany, on April 22, 1945. Settlement of the insurance proceeds was made with the appellant who refuses to make a distribution among her brothers and sisters. The appellees filed suit charging appellant as trustee of the insurance proceeds. She opposes this contention, and also claims the National Service Life Insurance Act of 1940, 38 U. S. C. A. §801, *supra*, prohibits the creation of a trust of such insurance funds.

There is very little authority to aid us in the consideration of any limitations upon the imposition of a trust on insurance proceeds payable under the National Service Life Insurance Act of 1940, 38 U. S. C. A. §801, *supra*.

Appellant relies to a large extent upon §454(a) of the Title:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

It is plain the object of this section is to protect the beneficiaries who are, by the act, close relatives and dependents of the deceased soldier from their own improvidence. This is in effect what is commonly known as a "spendthrift" clause. Clearly the purpose of §454(a), *supra,* is to prevent creditors from taking the proceeds of the soldier's insurance from his beneficiaries. We feel it should be interpreted in that light. The words "equitable process whatever" is limited to those processes brought by creditors. We see nothing in this section which indicates that Congress desired to prevent the raising of a trust where it is done to carry out the deceased soldier's intent.

In *Burgess* v. *Murray* (1952), 194 F. 2d 131, the insured soldier named his father as principal beneficiary of his National Service Life Insurance policy and his sister as contingent beneficiary. On November 23, 1943, the insured wrote his father stating he wanted the insurance used for the benefit of his children. The insured died on January 12, 1945. The Federal District Court held a trust was created for the benefit of the children. The United States Circuit Court of Appeals for the Fifth Circuit affirmed this judgment.

In *Kaschefsky* v. *Kaschefsky* (1940), 110 F. 2d 836, the insured soldier wrote a letter to his mother stating he desired all his insurance divided equally among his brothers and sisters. He said he had been told he could name only one beneficiary in the policy, and was naming only one of the brothers who was to divide it accordingly. The court quotes with approval from *Claffy* v. *Forbes,* D. C. Wash., 280 Fed. 233, 235, the following statement:

> "Form, formality, and the legal technicality must give way to common sense and remedial justice, when all doubt is removed as to the intent of the deceased soldier; and when the purpose of the law

has been complied with, there should be no hesitancy in carrying out the express wish of such deceased. The letter is a designation signed by the insured and the fact that it was sent to the mother to make the final designation, in the event of her death, instead of being sent to the bureau for record, should not defeat it."

That court had no difficulty with the Federal act in holding the named beneficiary a *trustee* of the proceeds of the insurance to be divided among all the brothers and sisters.

Appellant relies upon *Wissner* v. *Wissner* (1950), 338 U. S. 655, 70 S. Ct. 398, 94 L. Ed. 424, as supporting her position. An examination of that case shows that the deceased soldier intended for his mother, and not his estranged wife, to have the proceeds, and so designated his mother. The wife's claim was somewhat in the nature of that of a creditor. It was based upon the theory that she contributed one-half the premiums under the community property law of California, and that as a result, she was entitled to one-half of the proceeds. The court on appeal disallowed such a claim.

We feel we are bound by the interpretation and operation the Federal courts have given this legislation.

American Law of Veterans, 2nd Ed., §491, p. 351, says:

"As to policies maturing on or after August 1, 1946, the insured has a right to designate a beneficiary as trustee for another. As to policies maturing prior to August 1, 1946, the statute is silent with respect to the right of an insured to ingraft a trust upon the insurance proceeds. In the face of similar omission in the War Risk Insurance Act the courts held that a trust created by an insured would be enforced."

There is no prohibition against a transfer or assignment of a beneficiary's interest in such insurance to

another person within the permitted class of beneficiaries such as brothers and sisters, as here. 38 U. S. C. A. §816.

After a beneficiary once acquires title to the payments she may do as she pleases with the proceeds so far as the Government is concerned. It no longer places any restraint upon the disposition.

There appears no impediment in the National Service Life Insurance Act of 1940, 38 U. S. C. A. §801, *supra,* directly opposing the imposition of a trust on funds after they are received by a beneficiary in the interest of a proper disposition of the proceeds in conformity with the wishes of a deceased soldier, if the facts exist which, under other principles of equity, would raise a trust. *French* v. *French* (1946), 161 Kan. 327, 167 P. 2d 305, (Cert. Denied, 329 U. S. 727, 67 S. Ct. 81, 91 L. Ed. 629) ; *Shelly* v. *McKimmons* (1939), 32 Cal. App. 2d 711, 90 P. 2d 842, (Cert. Denied, *Davis* v. *Shelly,* 308 U. S. 610, 60 S. Ct. 174, 84 L. Ed. 510) ; *Claffy* v *Forbes, supra,* (1922), 280 Fed. 233; *Christensen* v. *Christensen* (1926), 14 F. 2d 475; *Ambrose et al.* v. *United States* (1926), 15 F. 2d 52.

We come now to a consideration of the final question in this case. Do facts exist here sufficient for the trial court to impress a trust upon the proceeds of the insurance received by the appellant for the benefit of herself and her brothers and sisters equally (except Randall) ?

We agree with appellant that no trust was created at the meeting in the attorney's office when the understanding and agreement was made between appellant, Helen Voelkel, and her soldier brother, for the division of the proceeds of the insurance money. She possessed no trust property or *res* at the time, and was not then the named beneficiary in any of his insurance contracts. One who has a mere

expectancy in property with no present interest cannot create a present trust thereof. Restatement, Trusts, §86, p. 243; Restatement, Trusts, §26f, p. 83; 1 Scott, Trusts, §86, p. 648.

The facts do support the consummation of a valid contract at the time between the appellant and her brother, to divide the proceeds as he requested. The contract was one for the benefit of third parties, the other brothers and sisters, as well as the appellant, and was supported by a consideration—the share of the proceeds she was to receive.

Bogert says:

"A trust may fail as a present trust because the trust property sought to be made the basis of it is a nonexistent interest on account of nonexistence of the thing to which the interest is to attach.

"Obviously there may be a *contract* to settle in trust an interest in a nonexistent thing at a future date when the thing comes into being. The enforcibility of such a contract will depend on principles. of the law of contracts." 1 Bogert, Trusts and Trustees, §112,. p. 507.

Some courts have given third party beneficiaries to a contract a remedy under certain equitable principles sometimes stated to be that of a trust. This is true, particularly in England and some jurisdictions in this country, where third parties, not being privy to the contract, are not permitted to sue on contract at law. This is a remedy forced by reason of the refusal of such courts to recognize a remedy for breach of such contract for the benefit of third parties. 1 Scott, Trusts, §14.3, p. 143; 2 Williston, Contracts, §360, p. 1053; 4 Corbin, Contracts, §782, p. 78; 1A Bogert, Trusts and Trustees, §203, p. 265.

In a majority of jurisdictions, including Indiana, however, we do not confuse such situations with trusts

but instead permit suits to be brought directly by third party beneficiaries on such contracts made for their benefit. Restatement, Contracts, §135a, p. 158, and Indiana Annotations thereto, Pocket Supp. p. 47; *Freigy* v. *Gargaro Company, Inc.* (1945), 223 Ind. 342, 60 N. E. 2d 288; *Hess* v. *Lackey* (1921), 191 Ind. 107, 132 N. E. 257; *Copeland, Executor et al.* v. *Summers et al.* (1894), 138 Ind. 219, 35 N. E. 514, 37 N. E. 971; *Stevens* v. *Flannagan et al.* (1892), 131 Ind. 122, 30 N. E. 898.

However, a valid contract to .create a trust should be distinguished from a presently created trust in fact. One is a promise, the other an existing fact. 1 Scott, Trusts, §30, p. 226; 1 Bogert, Trust and Trustees, §112, p. 507; Restatement, Trusts, §75, p. 225; Restatement, Trusts, §86b, p. 245; 54 Am. Jur., Trusts, §41, p. 51.

· The appellees' complaint in this case is based entirely upon the equitable theory of a trust, and not upon contract. Therefore, the contract for the benefit of a third party is of no benefit to appellees under their action as pleaded. Appellees are bound by the theory of their complaint. They cannot sue in equity asking that appellant, Helen Voelkel, be declared a trustee, and recover damages on contract for a breach of same. *Legrande* v. *Legrande*, (1935), 178 S. C. 230, 182 S. E. 432, 102 A. L. R. 582.

If the appellees are to prevail in this appeal it must be solely upon the theory that equity raises a trust upon the facts of this case. The evidence shows that the appellant's mere expectancy of becoming a named beneficiary of the insurance policy became a reality by the vesting of the interest, when her soldier brother named her as a beneficiary of the $10,000 of government insurance, and upon his death she received the proceeds in accordance with the prom-

ise she had made to him. The question then arises: Even though there is a mere promise to create a trust in property not then in existence, if thereafter such property or proceeds comes into existence, and vests in the one who made the promise to act as trustee, does equity impose a trust obligation upon such a person? We believe there are two reasons for answering that question in the affirmative in this case: (1) This situation is analogous to that of a proposed legatee who orally has promised a testator to distribute a legacy as a trust among certain beneficiaries, and then refuses to do so after receiving the property. Restatement, Trusts, §55a, p. 160, states a constructive trust "arises out of the breach of an intended expressed trust which is unenforceable because of the failure to comply with the requirements of the Statute of Wills." A similar situation arises where a man's heir or next of kin induces him not to make a will by a promise to hold the property in trust for a third person.

Among law writers there has been a great deal of controversy as to whether the constructive trust should be for the benefit of the intended beneficiary, and thus in effect carrying out a testamentary disposition without conforming to the Statute of Wills, or for the benefit of the heirs or estate of the testator, and thus merely restore the *status quo*. 1 Scott, Trusts, §55.1, p. 397; 3 Bogert, Trusts and Trustees, §501, p. 252; Costigan, 28 Harvard Law Review (1915), p. 237; Ames, Lectures on Legal History (1913), p. 430; 1 Restatement, Trusts, §55, p. 160.

Here we are *not* concerned with that problem. Neither the Statute of Wills nor the Statute of Frauds is involved. We have merely a promise made at the time when the proposed trust *res* was an expectancy, which later vested. To raise a constructive trust in this case will not violate or run counter to

either the Statute of Wills or Statute of Frauds. Normally, courts experience no difficulty in imposing a trust where there is fraud, deceit, or a confidential relationship existing, upon which the party furnishing the trust *res* has relied. When these factors are not very evident most courts, nevertheless, will pay lip service to these notions, and extend themselves in attempts to envision their existence before imposing a constructive trust for breach of such a promise.

> "The American cases show clearly that the courts regard the trust for C as constructive and as based upon the ground that B's conduct in seeking to retain the property for himself, after having obtained it from A on the faith of his promise to hold it for C, is highly reprehensible, and unconsciouable, or as many courts say, is 'fraudulent'." 3 Bogert, Trusts and Trustees, §499, p. 233.

> "Suppose, however, that B was not guilty of fraud or duress or undue influence, but has simply failed to perform his promise to hold for C or to convey to C? Even in such a case, by the weight of authority, C is entitled to recover the property, not only in the case of personal property, but also in the case of land." 1 Scott, Trusts, §55.1, p. 392.

Although it may be difficult to justify a constructive trust in all cases on the basis of fraud, still, if there is a breach of confidence coupled with an unjust enrichment which shocks the conscience if it is permitted to stand, it is then said to be a "constructive" fraud. To hold otherwise, it is said, is rewarding bad faith. 1 Scott, Trusts, §55.1, p. 397; 54 Am. Jur., §231, p. 177; 37 Harvard Law Review, p. 653; Restatement, Restitution, §160, p. 640.

These cases, which are inaptly called "secret" trusts, have the same characteristics as the insurance cases such as we have here. In the beginning a mere expectancy is involved until the person is named beneficiary

in the policy. Restatement, Trusts, §84b, p. 241; Restatement, Trusts, §57f, p. 178.

Both situations are the result of a breach of confidence and cause an unjust enrichment upon the death of the one furnishing the trust property, and the retention of the property by the promisor. We have been unable to find any cases involving reliance upon oral promises of a proposed beneficiary in an insurance policy to hold the proceeds in trust, where at the time the promise was made, the promisor was not then the beneficiary named in the policy. However, by strict analogy, we see no reason why the same principles of equity should not apply as that imposed in the case of a prospective legatee, or heir, who makes such a promise.

We need not base our decision upon the above analogy alone, but there is still another cogent reason why appellant must fail here.

(2) If there was any reaffirmance of the original promise by appellant after the interest became vested in her such as to constitute a second declaration of a trust, then she would be held by such operative facts in equity as a trustee.

Restatement, Trusts, §86c, p. 246, says:

"If a person promises to declare himself trustee of property which he hopes to acquire in the future or to transfer such property to another in trust, or if he purports to declare himself presently trustee of such property or to transfer such property to another in trust, no trust arises even when he acquires the property *in the absence of a manifestation of intentions at the time.*"    (Our italics.)

Scott says:

"Where a person promises, not that he will transfer property in trust, but that he will himself be trustee of the property at sometime in the future, a trust does not automatically arise when that time arrives. It will arise at that time, how-

ever, if the settlor then manifests an intention to be trustee. His subsequent conduct, taken into consideration with his prior promise, may amount to a present declaration of trust." 1 Scott, Trusts, §26.5, p. 213.

The facts here show that appellant did reaffirm her original promise after she acquired an interest in the proceeds of the insurance. It seems she not only reaffirmed her promise to make the distribution, but to some extent acted upon it, and entered upon the performance of the task of distribution.

The evidence is undisputed that shortly after the insured's death, when asked by her brother George about dividing the insurance money, she said: "Why certainly, what kind of a sister do you think I am?" Later, when asked when she was going to divide the money, she told them that it would be done as soon as her brother's body was brought back from Germany, and the expenses paid. As some of the money was received, she deposited it in the account of his estate, which was to be distributed among the brothers and sisters, except Randall. Later, she withdrew this, and put it in her private bank account. This seems to have occurred about the time of the making of a final accounting in the estate, and after an attorney had informed her she did not have to make any distribution of the insurance money to her brothers and sisters. The evidence is undisputed that appellant, after her right to the insurance proceeds became vested, declared not only by her statements, but also her acts that she was holding the proceeds of her brother's insurance for the benefit of her brothers and sisters and herself as originally agreed, thus giving a "manifestation of her intentions at the time" to act as trustee. An orally expressed trust may be created in personal property held and owned by a person, at any time by

the mere declaration that it is so held. No formal words are necessary if the intentions as well as the terms are plain. *Hinds, Extr.* v. *McNair* (1955), 235 Ind. 34, 129 N. E. 2d 553; 1 Bogert, Trusts and Trustees, §65, p. 398; 1 Restatement, Trusts, §39, p. 124.

The finding and judgment of the trial court is supported by the evidence.

Judgment is affirmed.

Achor, C. J. and Emmert, J., concur.

Bobbitt and Landis, JJ., concur in result.

NOTE.—Reported in 141 N. E. 2d 344.