**John R. SCOTT, Scott Financial Organization, Inc., Thomas J. Brown, Thomas J. Brown & Associates, Appellants–Defendants,**

v.

**BODOR, INC., Appellee–Plaintiff.**

No. 20A03–8910–CV–00443.[1]

Court of Appeals of Indiana, Fifth District.

May 16, 1991.

---

1. This case was reassigned to this office on January 2, 1991.

**316**

Peter G. Tamulonis, Thomas J. Jarzyniecki, Jr., Kightlinger & Gray, Indianapolis, for appellants-defendants.

Michael R. Parker, Michael Rosiello, Michael A. Klein, Barnes & Thornburg, Indianapolis, Paul D. Refior, Refior Law Office, Warsaw, for appellee-plaintiff.

SHARPNACK, Judge.

This case comes to us on interlocutory appeal from the denial of defendant's motion for partial summary judgment.[2] The motion was addressed to the two counts of plaintiff's complaint based on allegations of actual and constructive fraud. The third count for professional negligence is not before us. The plaintiff is Bodor, Inc., a corporation that implemented a "supplemental income" plan that was presented to it by the defendants Scott and Brown. The fraud claims are based on representations which the defendants, for purposes of this appeal only, admit were made in the course of presenting the plan to the plaintiff. The plan was funded by the purchase of life insurance from the sale of which the defendants shared commissions.

We conclude that there are genuine issues of material fact to be resolved by trial and affirm the trial court denial of partial summary judgment.

---

**2.** This court accepted interlocutory appeal in *Scott v. Bodor, Inc.* (1990), Ind.App., 550 N.E.2d 1326.

## ISSUES

The parties identify numerous issues for review. We consolidate and restate these issues as follows:

1. Whether the plaintiff presented facts sufficient to create a genuine issue of material fact on the question of whether the defendants made misrepresentations of past or existing fact.

2. Whether the plaintiff presented facts sufficient to create a genuine issue of material fact on the question of whether it was entitled to rely upon the defendants' misrepresentations.

3. Whether the defendants' actions can constitute a constructive fraud under Indiana law.

## FACTS

The following facts are those most favorable to the plaintiff as the nonmoving party. The plaintiff is a closely held Indiana corporation. Robert and Stephen Kesler own one hundred percent of its stock. Robert, Stephen, and Robert's wife Doris are all officers of the corporation.

In 1983, defendant Scott contacted Bodor in order to offer his services as a financial planner. Scott told Robert Kesler that he could offer Bodor a variety of plans that would provide income tax advantages to Bodor. Bodor eventually retained Scott, and, over the course of several years, he set up various insurance and investment plans for Bodor. He also provided tax planning advice to the company and to Robert Kesler. Scott advised John Bishopp, Bodor's controller, on the manner in which the contributions to these plans were to be entered on Bodor's books. Eventually, Scott became Bodor's general financial advisor, with unfettered access to Bodor's offices and financial information. Bodor's officers trusted Scott and never consulted third parties for advice concerning any financial arrangements which Scott made on behalf of Bodor. Scott also became a personal friend to Robert Kesler.

In 1985, Bodor's officers met with Scott to discuss the company's tax situation for the year. Scott suggested that a supplemental income plan would be extremely beneficial, and he recommended that Bodor's officers meet with defendant Thomas J. Brown, the owner of defendant Thomas J. Brown & Associates, Inc. Scott proclaimed Brown to be an expert in "supplemental income" plans, and he asked whether Bodor's officers would be willing to listen to a presentation on the plan by Brown. Bodor's officers agreed to hear the presentation.

In November of 1985, Brown flew to Indiana from his principal place of business in Tampa, Florida to pitch the plan. He presented the plan in a meeting with Robert and Stephen Kesler, accountant Raymond Plummer, Bishopp, and Scott which took place in Bodor's corporate offices. Scott introduced Brown to the Bodor officers as his associate, and Brown proceeded to explain the supplemental income plan to the Bodor officers. Brown told the Bodor officers that the supplemental income plan had two features which were extremely important to Bodor: the corporation could take an immediate tax deduction for any funds it contributed to the program and could retrieve any funds it paid in if it needed to do so. When Steve Kesler asked if the plan was a life insurance vehicle, Brown replied that it was primarily an investment vehicle with a small life insurance component. When Robert Kesler told Scott that he did not want the program if it was only a life insurance policy, Scott assured him that it was an investment procedure. Neither Brown nor Scott mentioned that the program was exclusively a whole life insurance policy, and the plan brochure prepared by Brown did not mention that the plan was to be funded exclusively through life insurance.

Within a month after the meeting, Robert Kesler decided to implement the plan. He also decided, however, that Bodor should not make the $260,000 principal payment that Scott and Brown had suggested. Instead, he decided that Bodor should contribute only $130,000 in the first year. He notified Scott of the decisions, and Scott began to prepare the documents, including insurance applications for Bodor's principal officers, necessary to implement the plan.

Those of Bodor's officers who were to be insured under the plan assisted Scott in filling out their life insurance applications. Each of the insured officers underwent a physical examination as part of the application process. Each of the insured officers signed a policy application, and Robert signed each application in his capacity as president of Bodor, the policy owner. When they were presented to the Bodor officers to be signed, the policy applications specified neither the cost or amount of the insurance to be procured; Scott filled in that information after he obtained the signatures on the applications. The Bodor officers were unable to discern the nature or extent of the insurance coverage from the policy applications.

Scott also prepared for Robert's signature a letter to the insurer to accompany the first principal payment. The letter stated neither the nature nor the extent of insurance coverage to be procured. In addition, the letter did not specify that all the funds to be paid in were to be used as insurance premiums. In late December of 1985, after the paperwork had been completed, Bodor issued its check for $130,000 to fund the first year of the plan. Bodor took a deduction for the $130,000 paid into the plan for the 1985 tax year.

In March of 1986, some three months after the implementation of the plan, Scott presented amended insurance applications to Robert for signature. These applications, which were the first documents that stated the face value of the insurance policy to be shown to any Bodor officer, did not state the nature or the cost of the insurance to be procured. Robert, as was his custom with regard to documents prepared for Bodor by his trusted friend and advisor Scott, signed the applications without reading them.

Scott never presented Bodor's officers with copies of the insurance policies or any other documents concerning the supplemental income plan despite Robert Kesler's requests for such documentation. Robert was not appraised of the existence of the whole life policy until an employee, Dawn Hoffman, found copies of the policies in Bishopp's desk sometime in the spring of 1987. Bishopp stated that he had not placed the policies in the desk, and that he did not know who had placed them there.

In the second year of the plan, 1986, Bodor earned greater profits and increased its contribution to the plan to $240,000 in order to earn a larger deduction. When Robert instructed Hoffman, who was temporarily replacing Bishopp as controller because Bishopp was ill, to issue a check to Scott for the second year principal payment, Hoffman asked him to explain the plan to her. Robert told her he would more fully explain the plan later, but he said the beauty of the plan was that Bodor could retrieve the money later if the company needed it. He also told her that the contribution was tax deductible.

In order to make the second year payment, Bodor borrowed $240,000 from the Ameritrust National Bank. James Stout, a vice-president of the bank, met with Robert and Scott to negotiate the loan. Based on information supplied by Scott, Stout prepared a memorandum for submission to the loan committee. The relevant portion of this memorandum stated:

> [F]unds to be used to fund a deferred pension program for the company. Will be repaid at $20M plus interest each month. This will save approximately $100M in taxes for 1986.

Bodor deducted the $240,000 principal payment from its 1986 taxes.

In April of 1987 Bodor's officers discovered that the $370,000 that Bodor had put into the plan was not tax deductible. Robert Kesler met with Scott in an attempt to determine what had gone wrong with the tax deduction. Scott confirmed that the contributions to the plan were not deductible, and the conversation became heated. Robert demanded that Bodor's funds imme-diately be withdrawn from the plan, and he asked when the funds would be returned. Scott replied that he did not know, but that he would call the insurer to find out. He went into Robert Kesler's private office, and when he returned, he said that he had called Los Angeles and that he had been told that Bodor would get most of its payments back. Bodor's phone records for the day in question show that no one made a call to Los Angeles from Robert's office on that day.

Scott later informed Robert that most of Bodor's funds in the plan would not be returned. Bodor has managed to recover only $117,000 of its $370,000 investment. Bodor has terminated all of its business dealings with Brown and Scott.

## DECISION

Defendants ask this court to review the trial court's denial of their motion for partial summary judgment. When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. *Ayres v. Indian Heights Volunteer Fire Dept.* (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. If no genuine issue of material fact exists, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law. *Norman v. Tur-*

*key Run Community School Corp.* (1980), 274 Ind. 310, 313, 411 N.E.2d 614, 615.

■ Defendants sought summary judgment on plaintiff's theories of actual and constructive fraud. Actionable fraud consists of five elements: 1) the fraud feasor must have made at least one representation of past or existing fact; 2) which was false; 3) which the fraud feasor knew to be false or made with reckless disregard as to its truth or falsity; 4) upon which the plaintiff reasonably relied; 5) and which harmed the plaintiff. *Edwards v. Hudson* (1938), 214 Ind. 120, 122, 14 N.E.2d 705, 706; *Groves v. First National Bank* (1988), Ind.App., 518 N.E.2d 819, 829–830.

## I. MISREPRESENTATIONS OF MATERIAL FACT

Defendants argue that the plaintiff has failed to produce evidence tending to show that they made any misrepresentations of material fact. They deny that their statements that the funds which they induced the plaintiff to invest in the insurance plan were immediately tax deductible are misrepresentations ·of past or existing fact. Defendants argue that, even assuming they made misstatements, the misstatements were, at most, misstatements of law. They further argue that under Indiana law misstatements as to the law can never form the basis of fraud since everyone is presumed to know the law and, consequently, the allegedly defrauded party cannot justifiably have relied on the misstatements. In support of this position, the defendants cite various cases, including *Peoples Trust Bank v. Braun* (1983), Ind. App., 443 N.E.2d 875; *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756; and *Platt v. Scott* (1843), 6 Blackf. 389.

■ It is true that in Indiana a misstatement of law normally does not constitute a representation upon which an action for fraud may be premised because the parties are presumed to know the law under which they live and thus are not protected from

the consequences of relying upon a misstatement of the law. There are, however, exceptions to this general rule. Misrepresentations as to the law of other states have been held sufficient to support an action for fraud, presumably because the parties are not held to know the law of foreign jurisdictions. *See, e.g., Travelers' Protective Association v. Smith* (1914), 183 Ind. 59, 69, 107 N.E. 283, 287; *Travelers Insurance Co. v. Eviston* (in Banc 1941), 110 Ind.App. 143, 160–161, 37 N.E.2d 310, 316–317.[3] Misrepresentations of domestic law will support an action for fraud where the party making the misrepresentation is an attorney or professes some knowledge in legal matters and induces a less experienced person to act in reliance on his misstatement of the law. *Kinney v. Dodge* (1885), 101 Ind. 573, 576; *Bales v. Hunt* (1881), 77 Ind. 355, 359–360. These cases make it clear that the Indiana rule that misrepresentations of law cannot be the basis for fraud is not an absolute, but will admit of exceptions in appropriate instances.

The RESTATEMENT (SECOND) OF TORTS, § 545, recognizes an exception to the general rule where the legal misrepresentation includes express or implied misrepresentations of fact:

> If a misrepresentation as to a matter of law includes, expressly or by implication, a misrepresentation of fact, the recipient is justified in relying upon the misrepresentation of fact to the same extent as though it were any other misrepresentation of fact.

We believe this exception to be consistent with Indiana law. In an instance where a legal misrepresentation is premised upon factual misrepresentations, the party to whom the legal misrepresentation is made will not be denied relief for relying on the misrepresentation under the theory that he has the same ability to discover the law of the state and the manner in which it applies to the transaction into which the other par-

---

**3.** We do not mean to suggest that the federal income tax law is not part of the domestic law of Indiana. We cite these cases for the sole purpose of illustrating the fact that there are exceptions to the general rule that misstatements of law cannot support an action for fraud in Indiana.

ty induces him to enter. His ability to correctly find and apply the law applicable to the facts has been impaired by the other party's misstatement as to the true facts. Under such circumstances, the courts of this state will not allow the misrepresenter to escape liability by taking his misrepresentations as mere misrepresentations of law.

■ Here, plaintiff has introduced evidence tending to show that the defendants made misrepresentations of law and fact. The factual misrepresentations dealt with the form and structure of the proposed plan, and the legal misrepresentations dealt with the tax deductible status of the plan. To the extent that the legal misrepresentations were premised on the factual misrepresentations, thereby impairing the plaintiff's ability to discover the law applicable to the true facts, we hold that the legal misrepresentations are a sufficient basis for an action in fraud.

■ As a further reason for affirming the trial court, the plaintiff argues that, in certain circumstances, pure misrepresentations of law can constitute actionable fraud. Plaintiff argues that, where a party who is especially skilled in the law makes representations to a party who is not skilled in the law, or where a party who stands in a relationship of trust and confidence with another party makes misrepresentations concerning the law to that party, actionable fraud results despite the general rule that misrepresentations concerning the law cannot constitute fraud. In support of this contention, plaintiff cites two supreme court cases, *Bales v. Hunt* (1881), 77 Ind. 355 and *Kinney v. Dodge* (1885), 101 Ind. 573.

Defendants reply that the special skill or knowledge exception has only been applied in cases in which an attorney advised a client as to the law. They contend that the exception is limited to attorney client communications, and, since none of the defendants here are attorneys, that the exception is inapplicable to this case.

We find the plaintiff's argument the more persuasive. It is true that the defendant in the *Kinney* case was an attorney, but we find nothing in the *Bales* case to suggest that the defendant there was an attorney; the opinion itself states that he was the agent of an insurance company and had obtained legal advice regarding the matter at hand. We conclude that this exception is not limited to attorney cases, but properly applies whenever a party claims a special knowledge or expertise in the law and induces another to rely on the claimed knowledge or expertise.

■ In this case, plaintiff produced depositions and affidavits in which various of its officers stated that Scott claimed an expertise in tax planning. These officers also stated that the plaintiff relied on Scott's claimed expertise for its tax planning. In addition, they stated that Brown claimed a special expertise in the type of plan into which the plaintiff was induced to enter. These facts, if proven at trial, would be sufficient to invoke the exception to the general rule that legal misrepresentations cannot form the basis for fraud.

■ Defendants next argue that their misrepresentations concerning the plaintiff's ability to retrieve funds from the plan whenever it needed to do so were predictions of a future event and not an actionable fraud under Indiana law. Indiana adheres to the common law rule that mere statements of opinion or promises of future action cannot constitute material misrepresentations capable of supporting an action in fraud. *Sachs v. Blewett* (1933), 206 Ind. 151, 185 N.E. 856; *Murphy v. Mellon Accountants Professional Corp.* (1989), 538 N.E.2d 968; *Peoples Trust Bank v. Braun* (1983), Ind.App., 443 N.E.2d 875.

■ We find that the defendants' representations concerning Bodor's ability to retrieve funds from the plan were representations concerning past or existing facts—the present features or terms of the proposed plan—and not mere statements of opinion or promises of future action. In *Whiteco Properties, Inc. v. Theilbar* (1984), Ind.App., 467 N.E.2d 433, the court of appeals held statements concerning the location of a building which was to be built in the future to be actionable misrepresen-

tations of past or existing fact where plans to build the building already existed and the party who made the statements knew them to be false. This court reached a similar result in *Captain & Company v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, where the fourth district held certain statements concerning the economic feasibility of rebuilding a fire damaged house to be statements of past or existing fact sufficient to support a recovery for fraud.

The defendants have attempted to distinguish the *Whiteco Properties* and *Captain & Company* cases by arguing that the statements concerning the availability of refunds in this case cannot be characterized as being present fact because the right to recover the funds did not exist until Bodor attempted to recover the funds in the future, because the investment plan did not exist until Bodor invested in it, and because the insurer had the right to deny Bodor's request for the return of the funds.

We find that the defendants' misrepresentations in this case fall squarely within the rule of *Whiteco* and *Captain & Company*. Defendants' misrepresentations in this case did not concern statements of opinion or promises of future action. The misrepresentations were misstatements concerning features of the proposed plan. In *Whiteco*, the defendant stated the plaintiffs would have an unobstructed view of the waterfront despite the fact that the defendant knew that it planned to construct a cabana which would obstruct plaintiffs' view. In *Captain & Company* the defendant told the plaintiffs that it would be economically feasible to reconstruct their house, and further told them that the reconstruction could be accomplished for the amount of the structural damage proceeds of their insurance policy, despite the fact that reconstruction was not economically feasible and could not be accomplished for the structural damage proceeds. Here, plaintiff produced evidence that defendants claimed the funds placed in the plan were tax deductible, that the funds were immediately recoverable, and that the plan was not primarily funded by life insurance. All these statements were misrepre-

sentations as to the features of the plan at the time it was offered to the plaintiff.

## II. RELIANCE

■ In order for the plaintiff to recover under a fraud theory, it must show both that it had a right to rely on the defendants' misrepresentations and that it did in fact rely on the misrepresentations to its detriment. *Captain & Company*, 505 N.E.2d at 96; *Barnd v. Borst* (1982), Ind. App., 431 N.E.2d 161, 169. Defendants contend that the plaintiff did not have the right to rely on their statements and did not, in fact, rely on the misrepresentations. Accordingly, defendants argue that plaintiff cannot recover for any harm due to defendants' misrepresentations.

### A. *Fact of Reliance*

Defendants first argue that the facts can only support the inference that the plaintiff did not rely on their statement that the plan was not primarily a life insurance policy because it should have been obvious that the plan was to be funded primarily by life insurance.

■ We find that the defendants are asking this court, contrary to the correct standard of review of summary judgment motions, to view the facts and inferences in the light most favorable to the defendants. In fraud cases, the question of whether the plaintiff in fact relied on the misrepresentation is a question of fact to be determined by the finder of fact. *First National Bank v. Acra* (1984), Ind.App., 462 N.E.2d 1345. As we noted above, such questions may not be decided against the nonmoving party on a motion for summary judgment unless the facts relevant to the issue are without dispute and will only support reasonable inferences favorable to the moving party.

■ Our review of the record revealed *no* evidence establishing that Bodor knew the plan was to be funded exclusively by means of life insurance. Instead we find that the record is replete with evidence that the defendants expressly assured it that the plan was not to be funded primarily by

insurance. The record shows that Scott never provided any documentation concerning the plan to any of plaintiff's agents, and plaintiff did not see the actual insurance policies until the spring of 1987. Furthermore, the policy applications prepared on Bodor's behalf by Scott did not mention either the face value of the policies or the premium to be paid. None of this information was included on any document presented to plaintiff's agents until Scott gave them the policy application amendments, which he prepared and presented for signature several months after the plan had already been put into operation. Finally, Robert Kesler stated that he did not read the amendments when he signed on behalf of the plaintiff because he had a confidential relationship with Scott and was accustomed to sign documents prepared by Scott for the plaintiff without reviewing them.

Defendants assert that policy amendment forms contained in the record made it clear that the plan was to be funded primarily by means of life insurance. The defendants do not effectively respond to plaintiff's argument that the policy amendment forms are irrelevant because the plaintiff did not see those forms until some three to four months after it had been induced to fund the plan.

We cannot agree that the amendment forms indisputably establish that the plaintiff did not rely on defendants' misrepresentations. As we noted earlier, when considering a motion for summary judgment, we cannot weigh evidence or resolve factual disputes. Defendants' argument on this point is no more than a request that we resolve obvious disputes of fact. We, like the trial court, will not invade the province of the finder of fact.

### B. *Right of Reliance*

In an argument not substantially different from their argument concerning the fact of reliance, defendants maintain that plaintiff had no right to rely on their misrepresentations. They first point out that, under Indiana law, a party has no right to rely on a statement if he has not exercised ordinary care in guarding against fraud. *Plymale*, 419 N.E.2d at 762. De-

fendants also cite *St. John v. Hendrickson* (1882), 81 Ind. 350, and *Craig v. ERA Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144 for the proposition that one who enters into a contract with full knowledge of a fraud in the inducement of the contract waives any legal claim for damages stemming from the fraud. Defendants contend that the facts show without dispute that plaintiff knew that the plan was an insurance policy, and, that by entering into the plan with this knowledge, the plaintiff has waived any claim for damages caused by defendants' misrepresentations. The defendants urge this court that, under their interpretation of the facts, plaintiff did not use due care to guard against fraudulent misrepresentations, and, thus, cannot reasonably have relied on the misrepresentations. *Plymale*, 419 N.E.2d at 762.

We find that there was evidence on the record which supported the inference that the plaintiff relied on defendants Scott and Brown, who claimed to be experts in the field, for tax planning advice. In addition, we find that there is evidence in the record sufficient to support the inference that neither it nor its agents possessed tax planning expertise.

In *Captain & Company v. Stenberg* the fourth district held that the law will not hold a person without expertise in a field to a duty which presumes an expertise in that field. 505 N.E.2d at 97. Under *Captain & Company*, we find that Bodor had a right to rely on the representations of the defendants in this case because they claimed to be experts in insurance and tax planning. Like the fourth district in *Captain & Company*, we decline to hold a party without expertise in a field to a duty which presumes that it has an expertise in the field. Here, Brown and Scott claimed to be experts, and the plaintiff relied on their expertise. We will not say the plaintiff had no right to do so.

### III. CONSTRUCTIVE FRAUD

Finally, the defendants contend that the uncontroverted facts demonstrate that there is no basis for plaintiff's constructive fraud claim. They identify two grounds

upon which the plaintiff bases its constructive fraud theory: they state that, with respect to Scott, plaintiff asserts the existence of a confidential relationship, and, with respect to Brown, plaintiff asserts reliance upon Brown's claimed expertise in the field of supplemental income plans. Defendants assert that neither of these grounds can support a recovery for constructive fraud.

The defendants cite several cases for the proposition that, in order for the courts to find a constructive fraud, the plaintiff must show that a relationship in which the defendant was the dominant party existed between the parties. *Peoples Trust Bank v. Braun* (1983), Ind.App., 443 N.E.2d 875, 879; *Grow v. Indiana Retired Teachers Community* (1971), 149 Ind.App. 109, 271 N.E.2d 140. They further argue that our precedent requires that the allegedly subordinate party show that the defendant abused its dominant position in order to gain an unconscionable advantage over the subordinate party. *Voelkel v. Tohulka* (1957), 236 Ind. 588, 141 N.E.2d 344, 70 A.L.R.2d 1349, *cert denied*, 355 U.S. 891, 78 S.Ct. 263, 2 L.Ed.2d 189; *Hunter v. Hunter* (1972), 152 Ind.App. 365, 283 N.E.2d 775.

In essence, defendants argue that constructive fraud cannot exist absent a confidential relationship and that the plaintiff has not shown that such a relationship existed between it and either Brown or Scott. With regard to Brown, the defendants deny that he had dealings with any representative of the plaintiff before meeting with the plaintiff's officers to pitch the supplemental income plan. Because the parties had no relationship before this meeting, the defendants reason that he could not have had a confidential relationship with plaintiff, and thus cannot be held to have abused a position of dominance over the plaintiff.

Defendants' argument with respect to Scott is somewhat more complex. Defendants assert that the evidence shows that Scott did have a prior relationship with the plaintiff, but that the relationship was limited to that of vendor and purchaser of insurance. As such, the only duty defendant Scott owed to the plaintiff was the duty normally owed a client by an insurance broker: the duty to exercise reasonable care, skill, and diligence in effecting insurance. *Steward v. City of Mount Vernon* (1986), Ind.App., 497 N.E.2d 939; *State Farm Life Insurance Co. v. Fort Wayne National Bank* (1985), Ind.App., 474 N.E.2d 524. Defendants further assert that *any* duty which Scott may have owed the plaintiff was limited to specific transactions, and that there was no evidence that Scott was the plaintiff's financial advisor as to matters other than insurance.

In addition, defendants argue that the evidence shows that Bodor was not a subordinate party. They note that all the plaintiff's principal officers were present at the meeting to discuss the plan; in addition, they note that the company accountant was present at the meeting, and that one of the company's attorneys was invited to the meeting. They assert that these facts conclusively demonstrate that the plaintiff relied on its own resources, and not on the defendants, for tax planning advice. In support of these contentions, defendants cite *Neff v. Indiana State University* (1989), Ind.App., 538 N.E.2d 255, a case in which the court of appeals held that a party represented by counsel in a particular transaction could not successfully claim that he relied on misstatements made by the other party to the transaction.

Finally, defendants argue that plaintiff had equal access to the information concerning the tax status of the plan. They cite *Vaughn v. General Foods Corp.* (7th Cir.1986), 797 F.2d 1403, *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 and *Amoco Oil v. Ashcraft* (7th Cir.1986), 791 F.2d 519 for the proposition that an action for fraud will not lie where both parties to a transaction have equal access to information about which one party allegedly made misrepresentations of fact. Thus, they argue that plaintiff had no right to rely on their misrepresentations.

Defendants are mistaken in arguing that constructive fraud can only exist where there is a confidential or fiduci-

ary relationship. In Indiana, the term constructive fraud encompasses several related theories. All of these theories are premised on the understanding that there are situations which might not amount to actual fraud, but which are so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent. Defendants are correct in asserting that a constructive fraud may be found where one party takes unconscionable advantage of his dominant position in a confidential or fiduciary relationship. *See, e.g., Voelkel v. Tohulka* (1957), 236 Ind. 588, 141 N.E.2d 344; *Pugh's IGA, Inc. v. Super Food Services, Inc.* (1988), 531 N.E.2d 1194; *Peoples Trust Bank v. Braun* (1983), Ind.App., 443 N.E.2d 875. This is not, however, the exclusive basis for the theory of constructive fraud.

■ In Indiana constructive fraud also includes what other jurisdictions have termed "legal fraud" or "fraud in law." [4] This species of constructive fraud recognizes that certain conduct should be prohibited because it is inherently likely to create an injustice. Our courts previously have held that a constructive fraud may arise in the absence of a confidential relationship where: 1) a seller makes unqualified statements in order to induce another to make a purchase; 2) the buyer relies upon the statements; and 3) the seller has professed to the buyer that he has knowledge of the truth of the statements. *Kirkpatrick v. Reeves* (1889), 121 Ind. 280, 282, 22 N.E. 139, 140; *Coffey v. Wininger* (1973), 156 Ind.App. 233, 240, 296 N.E.2d 154, 160; *Smart & Perry Ford Sales v. Weaver* (1971), 149 Ind.App. 693, 698, 274 N.E.2d 718, 722. Under these circumstances, the law recognizes that the innocent party may well be induced to rely on the claimed knowledge of the seller. *Id.*

■ Here, the plaintiff produced evidence tending to show that the defendants claimed special knowledge as to matters of tax planning. In addition, Brown claimed to be a specialist in the type of plan into which the defendants collectively induced the plaintiff to enter. The defendants made affirmative, unqualified statements concerning the tax deferred nature of contributions to the plan, the plaintiff's ability to get plan contributions refunded when needed, and the nature of the investments underlying the plan. The plaintiff produced evidence tending to show that it relied upon the defendants claimed special knowledge, and plaintiff has thus produced sufficient facts to support a cause of action for constructive fraud. The trial court committed no error when it denied the motion for summary judgment.

■ Even if plaintiff were required to prove a confidential relationship existed between it and the defendants in order to establish constructive fraud, we would not find the trial court erred, because we find the plaintiff produced evidence sufficient to withstand defendants' motion for summary judgment. In support of the contention that Scott enjoyed a confidential relationship with it, the plaintiff presented evidence that Scott had implemented a variety of financial arrangements for Bodor, and that it eventually entrusted all of its strategic tax planning to Scott. The plaintiff's president trusted Scott and never had third parties review Scott's recommendations. Under these circumstances, summary judgment would have been inappropriate in this case because the record contained facts tending to show a confidential relationship existed between Bodor and Scott and because the question of whether a confidential relationship existed is one of fact to be determined by the finder of fact. *Hall v. Indiana Department of State Revenue* (1976), 170 Ind.App. 77, 351 N.E.2d 35; *Hunter v. Hunter* (1972), 152 Ind.App. 365, 283 N.E.2d 775, *clarified* (1973), 156 Ind. App. 187, 295 N.E.2d 834.[5]

**4.** For an example of the concept of legal fraud, *see H.L. Peterson Co. v. Applewhite* (5th Cir. 1967), 383 F.2d 430.

**5.** As a further ground for affirming the trial court, plaintiff asserts the defendants may be held liable for fraud because the provisions of the plan documents varied materially from the terms which the defendants had orally represented to plaintiff's officers. *Central National Bank v. Shoup* (1986), Ind.App., 501 N.E.2d 1090; *Peoples Trust & Savings Bank v. Hum-*

To sum up, we find that there are genuine issues of material fact to be resolved as to the making of the misrepresentations and reliance upon them and that the misrepresentations, if made, are such that they would support recovery for actual or constructive fraud, as the proof may or may not develop.

The trial court denial of defendants' motion for partial summary judgment is affirmed.

AFFIRMED.

GARRARD, J., concurs.

SULLIVAN, J., concurs in result.

*phrey* (1983), Ind.App., 451 N.E.2d 1104, *disagreed with on other grounds, Gomez v. Adams* (1984), Ind.App., 462 N.E.2d 212, 227 n. 11; *McNair v. Public Savings Insurance Co.* (1928), 88 Ind.App. 386, 163 N.E. 290. We agree with the defendants that the plaintiff cannot recover under this theory because the evidence is undisputed that the defendants did not draft any of the insurance policies or other documents embodying the plan.