R.R.S. II ENTERPRISES, INC., Appellant (Plaintiff Below),

v.

REGENCY ASSOCIATES, James R. McKinney, Gayla J. Gubler, Paul R. Kinney, David C. Eades, Individually and in their capacities as General Partner and Registered Agent, Director of Leasing and Senior Leasing Representative, General Partner, and Managing Partner, and Regency Village Commons, Ltd., Appellees (Defendants Below).

No. 82A04–9408–CV–329.

Court of Appeals of Indiana, Fourth District.

Jan. 25, 1995.

Rehearing Denied March 27, 1995.

---

George T. Patton, Jr., Bose McKinney & Evans, Lisa L. Schneider, Kuss & Schneider, Indianapolis, for appellant.

Carl A. Heldt, Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, for appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

R.R.S. II Enterprises, Inc. (R.R.S.) appeals from the trial court's grant of Regency Associates, James R. McKinney, Gayla J. Gubler, Paul R. Kinney, David C. Eades, and Regency Village Commons, Ltd.'s (Regency) motion to dismiss R.R.S.' complaint.

Reversed and remanded in part; affirmed in part.

### ISSUES

I. Did the trial court err in dismissing Count I of R.R.S.' complaint alleging fraud?

II. Did the trial court err in dismissing Count IV of R.R.S.' complaint alleging breach of lease? [1]

### FACTS

R.R.S. is an Indiana corporation engaged in the video rental business. On July 29, 1987, Ron R. Schneider II, president of R.R.S., met with Gayla Gubler, the director of leasing for Regency, owner of a property in Evansville on which it planned to develop a shopping center. Schneider and Gubler discussed the possibility of R.R.S. opening a video store in the planned shopping center. Gubler told Schneider that the shopping center would have two lanes of ingress and two lanes of egress from the heavily trafficked Lloyd Expressway, and, for this reason, this site was better than another Regency-owned site in Seymour, Indiana.

On December 31, 1987, Regency forwarded a lease application to Schneider attached to which was an exhibit depicting two lanes of ingress and two lanes of egress from the

---

1. R.R.S.' complaint denominates Count IV as "Bad Faith Breach of Contract." R. at 18. However, because the "contract" in this case is, in fact, a lease, we will refer to Count IV as a claim for breach of lease for purposes of clarification.

planned shopping center. On January 19, 1988, Schneider signed a lease, to which was attached an exhibit depicting double lanes of ingress and egress, on behalf of R.R.S. On February 4, 1988, David C. Eades signed a lease on behalf of Regency. Over a year later in March of 1989, Gubler informed Schneider that the State did not approve two lanes of ingress and two lanes of egress from the shopping center, but rather only approved one lane respectively.

Between April of 1989, and January 1990, R.R.S. and Regency exchanged correspondence concerning the lanes of ingress and egress. Then, in July of 1992, Schneider discovered that on January 28, 1987, the Indiana Department of Transportation (IDOT) adopted a plan for single lane ingress and egress from the shopping center and that it never considered approving a plan providing for two lanes of ingress and egress because double lane access was impossible. Additionally, Schneider discovered that in December 1987, the Evansville Urban Transportation Study (EUTS), which had rejected the two lane access plans on October 20, 1987, approved final plans for the shopping center that provided for only one lane of ingress and one lane of egress. Approval of the shopping center plan from both IDOT and EUTS was required before double lanes of ingress and egress could be constructed.

On January 15, 1993, R.R.S. filed a four-count complaint against Regency alleging Regency's acts and omissions caused R.R.S. to suffer lost income and economic harm. Pursuant to Ind.Trial Rule 12(B)(6), Regency filed a motion to dismiss R.R.S.' complaint for failure to state a claim. R.R.S. responded with a brief in opposition to Regency's motion and the affidavit of Schneider. On February 3, 1994, the trial court dismissed all four counts of R.R.S.' complaint. R.R.S. now appeals the trial court's dismissal of Count I alleging fraud and Count IV alleging breach of contract.

### DECISION

Because Schneider's affidavit, a matter outside the pleadings, was submitted to and not excluded by the trial court, Regency's motion to dismiss was automatically transformed into a motion for summary judgment. Ind.Trial Rule 12(B)(8). We therefore treat the trial court's grant of Regency's motion to dismiss as a grant of summary judgment in Regency's favor.

Our standard of review for summary judgment is well-settled and is the same as it was for the trial court: we determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *J.A.W. v. Roberts* (1994), Ind.App., 627 N.E.2d 802, 807. We stand in the shoes of the trial court. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* We only consider the evidentiary matter designated by the parties without determining its weight or credibility. *Selleck v. Westfield Insurance Company* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* Here, the only facts designated to the court are those submitted by R.R.S. in its complaint and in Schneider's affidavit. Furthermore, while Regency generally disputes the facts giving rise to R.R.S.' complaint in its Appellee brief, it nevertheless "responds to and assumes [their] accuracy only for the purposes of appeal." Appellee's brief at 4.

### I. FRAUD

In its complaint for fraud, R.R.S. recites the above-mentioned facts, and claims that Regency misrepresented material facts with respect to the lanes of ingress and egress, the occupancy of the shopping center, and commitment of an anchor store to the shopping center. R.R.S. claimed that Regency knew the representations to be false at the time they were made, that R.R.S. relied on the misrepresentations, was thereby induced to execute the lease, and that, as a result, R.R.S. suffered economic loss. Our review is limited, however, because R.R.S. appeals only the trial court's ruling to the extent it precludes a claim for fraud based on the misrepresentations of Regency concerning the ingress and egress lanes.

■ Actionable fraud consists of five elements: 1) the fraud feasor must have made

at least one representation of past or existing fact; 2) which was false; 3) which the fraud feasor knew to be false or made with reckless disregard as to its truth or falsity; 4) upon which the plaintiff reasonably relied; and 5) which harmed the plaintiff. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 319.

 In its motion to dismiss and on appeal, Regency characterizes its representation to R.R.S. that the shopping center would have two lanes of ingress and two lanes of egress as a prediction of a future event, as opposed to a representation of a past or existing fact. In support of its contention, Regency directs our attention to the oft-cited case of *Sachs v. Blewett* (1933), 206 Ind. 151, 185 N.E. 856, wherein our supreme court found that "fraud cannot be predicated upon a promise to do a thing in the future although there may be no intention of fulfilling the promise." *Id.* at 156, 185 N.E. 856.

We agree with Regency's statement of Indiana law. Nevertheless, when the facts are viewed in the light most favorable to R.R.S., we are persuaded to agree with R.R.S.' contention that Regency's representation concerning the double lane ingress and egress was, in fact, a representation concerning a present fact. Regency needed the approval of both IDOT and EUTS to construct double lanes of ingress and egress. Regency knew on January 28, 1987 that IDOT specifically adopted a shopping center plan which provided for one lane of ingress and one lane of egress only because, according to IDOT, double lane access was impossible. Nevertheless, more than six months later on July 29, 1987, Regency represented to R.R.S. that the shopping center plan provided for double lane access. Furthermore, in December of 1987, EUTS adopted the final plan for the shopping center which provided for single lane access, after having rejected the double lane access plan in October of 1987. On December 31, 1987, however, Regency forwarded a lease application to R.R.S. which included an attached exhibit depicting double lane access to the shopping center. On January 19, 1988, R.R.S. signed a lease attached to which was an exhibit depicting plans for double lane access.

Because Regency was only able to secure approval from IDOT and EUTS for single lane access, each time it represented to R.R.S., either orally or in writing, that the shopping center plans included double lanes of ingress and egress, Regency misrepresented the construction plans as they existed throughout the lease negotiations. Thus, based on the facts before us, it appears that Regency's representations concerned a "present" fact.

Despite Regency's protestations to the contrary, our decision comports with the conclusions we reached in *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, and *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313. In *Whiteco*, Whiteco sold lakefront property to the Plaintiffs. At the time of the sale negotiations, Whiteco represented to Plaintiffs that the view of the lake from their property would be unobstructed. However, at the same time, Whiteco had plans to build a cabana between the lake and Plaintiff's property which, when built, obstructed Plaintiff's view. We concluded that because the plans to build the cabana existed at the time Whiteco told Plaintiffs their view would be unobstructed, the evidence was sufficient to establish that Whiteco misrepresented a past or present fact. In *Scott*, we relied on our analysis in *Whiteco* to conclude that misrepresentations about the features of an insurance plan at the time the plan was offered to the Plaintiff were misrepresentations about a present fact.

Next, citing *Barnd v. Borst* (1982), Ind. App., 431 N.E.2d 161, 169, Regency correctly points out that reliance is an essential element of fraud which consists of the fact of reliance and the right to rely. Regency argues we should affirm the trial court's dismissal of R.R.S.' complaint for fraud because it claims R.R.S. had no right to rely on Regency's representations concerning the shopping center access. In support of its contention, Regency points to various provisions of the lease which essentially provide that Regency reserved the right to change the layout of the access roads.

Our review of the record, however, reveals that Regency did not make this argument to the trial court, but instead confined itself to

arguing that Regency's representations with respect to the access roads were predictions of future events. Therefore, Regency has waived review of its reliance argument on appeal, and we accordingly decline to address it. *Bicknell Minerals, Inc. v. Tilly* (1991), Ind.App., 570 N.E.2d 1307, 1312 n. 1, *reh'g denied, trans. denied.*

We conclude the facts presented by R.R.S.' on its complaint for fraud are sufficient to survive summary judgment.[2] We therefore find the trial court erred in dismissing Count I of R.R.S.' complaint.

## II. BREACH OF LEASE

■ A lease is to be construed as any other contract. *Whiteco Industries, Inc. v. Nickolick* (1991), Ind.App., 571 N.E.2d 1337, 1339, *trans. denied.* As a general rule, the construction or legal effect of a contract is a question of law to be determined by the court. *Gregory and Appel, Inc., v. Duck* (1984), Ind.App., 459 N.E.2d 46, 51.

■ R.R.S. contends that Regency breached "its covenant to provide two lanes of ingress and two lanes of egress to the shopping center." Appellant's brief at 27. In support of its contention, R.R.S. points to Exhibit A–1, which is attached to the lease and depicts two lanes of ingress and two lanes of egress, and claims the existence of that diagram constitutes a warranty on Regency's behalf to provide double lane access roads.

In response, Regency directs our attention to Section 2.03 of the lease, which provides in pertinent part:

"Exhibits A and A–1 show the general layout of the *Shopping Center* ... but shall not be deemed to be a warranty on the part of Landlord that said shopping center will be as shown on Exhibits A and/or A–1 ...."

R. at 24 (emphasis added). Basing its argument on this provision, Regency claims that it did not covenant to provide two lanes of ingress and two lanes of egress.

Exhibit A–1 of the lease is a diagram depicting the shopping center buildings, parking lot, proposed dedicated streets, outlots, and two lanes of ingress and two lanes of egress off the Russell G. Lloyd Expressway. Section 2.02 of the lease defines "Shopping Center" as

"that portion of the property owned by Landlord or controlled by Landlord under a leasehold interest, including any out parcels or buildings not attached thereto."

R. at 24 and 69.

Our review of the lease and other designated materials, however, fails to reveal any evidence indicating the lanes of ingress and egress are "owned by" Regency or "controlled by" Regency. We are therefore unable to determine whether the Shopping Center layout mentioned in Section 2.03 includes the lanes of ingress and egress. Consequently, we are unable to determine as a matter of law whether or not the parties agreed Regency would warrant double lanes of ingress and egress. Accordingly, the trial court erred in dismissing R.R.S.' claim for breach of lease.

■ However, as Regency points out, to the extent that R.R.S. has a viable breach of lease claim, "its actions lie solely against Regency Village Commons, Ltd., the 'Landlord.' " Appellee's brief at 26. We agree. Section 33.17 of the lease provides:

*"Waiver of Liability:* Anything contained in this Lease to the contrary notwithstanding, Tenant agrees that Tenant shall look solely to the estate and property of the Landlord in the land and buildings comprising the Shopping Center of which Premises forms a part and the rentals therefrom for the collection of any judgment (or other judicial process) requiring the payment of money by the Landlord *with respect to any of the terms and provisions of this Lease to be observed and/or performed by Landlord ...."*

---

**2.** Our conclusion that Regency's representations concerning its plans with respect to the ingress and egress access lanes were, in fact, representations concerning a present fact is based solely on those facts presented by R.R.S. in its complaint and in Schneider's affidavit. These facts, while sufficient for R.R.S.' complaint for fraud to survive summary judgment, may not be sufficient to prevail on a fraud theory at trial where Regency will have an opportunity to present additional facts.

R. at 50 (emphasis added). Regency Village Commons, Ltd. is the landlord. R. at 23. Thus, R.R.S. has agreed to look solely to Regency Village Commons, Ltd.'s interest in the Shopping center for compensation in the event Regency Village Commons, Ltd. breaches the lease. In other words, this provision bars R.R.S. from collecting compensation from the other defendants in this lawsuit should Regency Village Commons, Ltd. be found to have breached the lease. It is therefore axiomatic, in the interests of fairness and judicial economy, that R.R.S. be limited to suing Regency Village Commons, Ltd. for breach of lease. Accordingly, although the trial court erred in dismissing R.R.S.'s claim for breach of lease as to Regency Village Commons, Ltd., we affirm the trial court's dismissal as to Regency Associates, James R. McKinney, Gayla J. Gubler, Paul R. Kinney, and David C. Eades.

In conclusion, we reverse the trial court's dismissal of Count I of R.R.S.' complaint for fraud as to all defendants, we reverse the trial court's dismissal of Count IV of R.R.S.' complaint for breach of lease as to Regency Commons Village, Ltd. only, and remand for further proceedings consistent with this opinion.

Reversed and remanded in part, affirmed in part.

CHEZEM and RUCKER, JJ., concur.