Jacqueline WHYDE, Appellant–Plaintiff,

v.

Robert CZARKOWSKI, M.D.,
Appellee–Defendant.

No. 29A05–9506–CV–239.

Court of Appeals of Indiana.

Dec. 22, 1995.

Transfer Denied May 15, 1996.

Stephen B. Caplin, Indianpolis, for Appellant.

Kevin Charles Murray, Todd J. Kaiser, Sandra Boyd Williams, Locke Reynolds Boyd & Weisell, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Jacqueline Whyde appeals the trial court's grant of summary judgment in favor of defendant-appellee, Dr. Robert Czarkowski, on her claim for medical malpractice. The sole issue for our review is whether the trial court erred in granting the motion for summary judgment. We reverse and remand.

On December 22, 1989, Jacqueline Whyde sustained a work related injury to her right shoulder, which was later diagnosed as a rotator cuff tear. On January 25, 1990, the worker's compensation carrier sent Whyde to Dr. Raymond DeLorenzi. Subsequently, DeLorenzi performed surgery on the shoulder and continued to follow her recovery.

On August 27, 1990, Dr. Robert Czarkowski examined Whyde at the request of the worker's compensation carrier. Czarkowski also examined Whyde on November 30, 1990, at the request of the carrier. Czarkowski evaluated Whyde's flexion, extension, abduction, external, and internal mid-thoracic range of motion. As part of the examination, Whyde was required to move both of her arms. Whyde was able to raise her left arm up and point to the ceiling but was unable to do the same with her right arm.

Sometime later, Whyde filed a complaint against Czarkowski with the Indiana Department of Insurance pursuant to Ind.Code § 27–12–8–4.[1] In the complaint, Whyde alleged that Czarkowski negligently cared for her arm. After a hearing on December 7, 1993, a medical review panel decided that the evidence did not support the conclusion that Czarkowski failed to meet the applicable standard of care as alleged in Whyde's complaint.

On January 31, 1994, Whyde filed a medical malpractice complaint against Czarkowski in the trial court. Czarkowski filed a motion for summary judgment and designated the certified opinion of the medical review panel. In her memorandum in opposition to summary judgment, Whyde alleged that just prior to finishing the examination, Czarkowski,

"was standing behind Jackie and he put a hand on her shoulder in order to feel the movement when she raised her arm. After Jackie raised her arm as far as she could, Dr. Czarkowski took her arm and *forcefully,* and very quickly, pushed it straight up. After this movement, Jackie suffered extreme pain."

Record, pp. 28–29 (original emphasis). Whyde designated her affidavit, her mother's affidavit, the complaint, and Czarkowski's deposition but did not file any independent expert testimony regarding the applicable standard of care.

On March 8, 1995, the trial court granted the motion because Whyde failed to submit expert testimony regarding the applicable standard of care. Whyde appeals the court's decision.

At the outset, we reiterate our well established standard of review with respect to challenges to the entry of summary judgment. Upon review, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Department, Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. We may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; *see* Ind.Trial Rule 56(C), (H). Any doubt as to the issue of a material fact, or an inference to be drawn from the facts, must be resolved in favor of the non-moving party. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630, 633. "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 318. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense which bars the plaintiff's claim. *Moore v. Sitzmark* (1990), Ind.App., 555 N.E.2d 1305, 1307.

To maintain a claim of medical malpractice, the plaintiff must show (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty by allowing conduct to fall below a set standard of care, and (3) a compensable injury proximately caused by defendant's breach of the duty. *Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272, 1275. To determine whether the physician's conduct fell below the legally prescribed standard of care, the plaintiff-patient must present expert testimony to establish what a reasonably prudent physician would or would not have done in treating the plaintiff. *Snyder v. Cobb* (1994), Ind.App., 638 N.E.2d 442, 445–446, *trans. denied.* Failure to provide expert testimony will usually subject the plaintiff's claim to summary disposition. *Widmeyer v. Faulk* (1993), Ind.App., 612 N.E.2d 1119, 1122. However, a plaintiff is not required to present expert testimony in those cases where deviation from the standard of care is a matter commonly known to lay persons. *Culbertson v. Mernitz* (1992), Ind., 602 N.E.2d 98, 100. This exception is based upon the doctrine of *res ipsa loquitur* where

---

1. We note that this complaint does not appear in the record of proceedings. Neither of the parties indicate when it was filed or state the exact nature of the complaint. However, the record does contain the panel's decision.

the deficiency of the physician's conduct "speaks for itself". *See id.*

On appeal, Whyde first argues that she was not required to provide expert testimony regarding the applicable standard of care because "common folk understand that when a physician is merely 'examining' a patient's arm he or she does not forcefully jerk the injured arm." Appellant's brief, p. 9, n. 1. Alternatively, she argues that the applicable standard of care was established by Czarkowski's deposition. We will examine each of these arguments.

Whyde's first argument is that she is not required to present expert testimony in this case. In support of his motion for summary judgment, Czarkowski designated the opinion of the medical review panel which found that Czarkowski met the applicable standard of care. This evidence was sufficient to satisfy Czarkowski's burden of showing no genuine issue of material fact; without a breach of the standard of care, Czarkowski would be entitled to judgment as a matter of law. *See Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. "The plaintiffs cannot prevail in a medical malpractice action or any other tort claim where the undisputed evidence demonstrates that the defendant did not breach any duty owed to the plaintiff." *McGee v. Bonaventura* (1993), Ind.App., 605 N.E.2d 792, 794. Therefore, Whyde had the burden of presenting expert testimony to demonstrate a genuine issue for trial, that is, whether Czarkowski breached the standard of care. *See Oelling*, 593 N.E.2d at 190; *McGee*, 605 N.E.2d at 794. However, Whyde contends that the exception to the rule requiring expert testimony applies to the facts of this case. We disagree.

Our courts have held that expert testimony is not required when the fact finder can understand that the physician's conduct fell below the applicable standard of care without technical input from an expert witness. *See Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 441. This "common knowledge exception" is applicable in select cases:

"in which the complained-of conduct is so obviously substandard that one need not

possess medical expertise in order to recognize the breach. It is otherwise when the question involves the delicate interrelationship between a particular medical procedure and the causative effect of that procedure upon a given patient's structure, endurance, biological makeup, and pathology. The sophisticated subtleties of the latter question are not susceptible to resolution by resort to mere common knowledge."

*Malooley v. McIntyre* (1992), Ind.App., 597 N.E.2d 314, 319. Thus, this exception is narrow and is restricted to cases in which the alleged malpractice is "so obvious as to allow plaintiffs to rely on the doctrine of res ipsa loquitar." *Wright v. Carter* (1993), Ind., 622 N.E.2d 170, 171. These "obvious" cases have generally been limited to the leaving of foreign objects such as cement or wire in the patient's body after surgery. *See id.; Burke*, 520 N.E.2d at 441.

Here, the allegedly negligent conduct was the application of passive range of motion ("PROM"). PROM occurs when a physician or mechanical device assists a patient with the range of motion of the patient's joints. PROM is used to determine which motions may not be performed by the patient without assistance because of injury or muscle weakness. Upon review, we find no authority requiring us to include this case within the common knowledge exception. In addition, we are unwilling to expand the breadth of the exception because the medical conduct here is not so "obviously substandard that one need not possess medical expertise in order to recognize the breach." *See Malooley*, 597 N.E.2d at 319. Therefore, we find that Whyde was required to present expert testimony to establish the applicable standard of care.

Whyde's alternative argument is that she did present expert testimony regarding the standard of care when she designated Czarkowski's deposition in her memorandum in opposition to the motion for summary judgment because she claims the deposition establishes the standard of care.[2] The fol-

2. We note that Whyde relied upon a letter written by Dr. DeLorenzi to a claims examiner in

lowing sections of the deposition are relevant for this discussion:

"Q Are there certain principles of medicine that are followed when passively moving an extremity that has suffered an injury either in the extremity or the shoulder?

A I don't understand what you're asking.

Q Passive motion, as I understand it, by a physician is where the physician assists the patient in moving the extremity?

A That is correct.

\* \* \* \* \* \*

Q If the shoulder—what particular injury did Jackie Whyde suffer in this case?

A According to Dr. DeLorenzi's notes, she sustained a labral tear in her shoulder.

Q She underwent some physical therapy, as I understand it; is that right?

A According to the notes, yes.

Q When passively moving a shoulder that has suffered a labral tear, is that what you said—

A Yes.

Q —are there certain principles that are followed medically to determine the extent of the passive motion in such an injury?

A Passive motion is assisting the patient to determine what motions may not be able to be done actively because of muscle weakness or because of a possible rotator cuff tear.

Q Are there certain limits beyond which you do not passively move the extremity in such a patient?

A If a patient complains of pain, you don't move the shoulder. You stop at the point of pain.

Q You stop at the point of pain. Why is that?

A Well, if a patient would complain of pain, there is no reason to push the shoulder any further.

Q If one pushes the shoulder further, can that injure a patient?

A It's possible."

Record, pp. 89–91. Whyde contends that Czarkowski's testimony established the accepted medical principles which provide that once a patient reaches the point of pain, the physician should not apply PROM to the shoulder.[3] She argues that this testimony establishes the applicable standard of care.

Although Czarkowski concedes he testified that PROM on an injured shoulder should be discontinued when the patient complains of pain, he argues that the testimony does not relate to the facts of this case. Czarkowski argues that the testimony "is substantially short of establishing the requisite standard of care for orthopaedic surgeons completing an independent medical examination under similar circumstances." Appellee's brief, p. 17. Czarkowski relies upon our holding in *Bougher v. Choi* (1990), Ind.App., 562 N.E.2d 1289, in which the plaintiff attempted to establish the applicable standard of care through the defendant's testimony.

In *Bougher*, the doctor testified that if he cut a nerve in the plaintiff's hand during an orthopedic surgery, he should not have done so. *Id.* at 1290–1291. We characterized this testimony as "merely a statement that a cut nerve is an unintended outcome not 'properly chargeable [to a physician] without some proof of a negligent act.'" *Id.* at 1291 (quoting *C.F. Broughton, D.M.D. v. Riehle* (1987), Ind.App., 512 N.E.2d 1133, 1137). Czarkowski argues that his testimony was also insuffi-

---

support of her argument. The letter described Czarkowski's action as a "crude and painful examination of her shoulder" and as "crude and cruel". Record, p. 21. However, Whyde failed to designate this evidence in her motion in opposition to summary judgment and we are now unable to consider it. *See Rosi*, 615 N.E.2d at 434.

**3.** We note that neither party cites to an Indiana case for the proposition that a defendant's own testimony may be used to establish the standard

of care. However, Whyde cites to cases in other jurisdictions which have addressed the issue. Whyde also relies upon Ind.Trial Rule 43(B) which allows a party to call an adverse party as a witness in order to establish facts and evidence. T.R. 43(B). Finally, Czarkowski appears to accept Whyde's position. Therefore, without addressing this issue in detail, we will assume that a patient may use the physician's deposition as the sole expert testimony regarding the standard of care.

cient to establish the standard of care. We disagree.

■ Whyde is required to establish the applicable standard of care. The standard of care is the degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which the physician belongs, acting under the same or similar circumstances. *Vergara v. Doan* (1992), Ind., 593 N.E.2d 185, 187. Czarkowski's testimony established the degree of care exercised by reasonably careful, skillful and prudent practitioners. *See Vergara,* 593 N.E.2d at 187. Czarkowski testified that once a patient complains of pain, the physician should no longer passively move the shoulder. He testified that once a patient has reached a point of pain, there is no need to apply PROM. Although the questions to Czarkowski and his answers were not couched in classic terms of the applicable standard of care, it is clear that an orthopedic surgeon was expressing his opinion that an orthopedic surgeon should not use passive motion to move a patient's arm beyond the point where the patient complains of pain because to do so could injure the patient. For purposes of summary judgment, at least, this statement will suffice as evidence of the applicable standard of care and, therefore, Whyde satisfied her burden of demonstrating a genuine issue of material fact.

■ Furthermore, the parties dispute whether the standard of care was violated. Whyde maintains that PROM was applied to her shoulder after she complained of pain. She relies upon the affidavit of her mother for support. In the affidavit, Whyde's mother stated:

"I was sitting there looking at Jackie and Dr. Czarkowski turned around, and I though well he's leaving, this was quick. He turned around like he was going towards the door, then he turned back and said, 'Wait a minute, I want to see something.' He walked around behind Jackie and said, 'I want you to bring your arm up.' He put his left arm from her back over to where she had the surgery. I thought well he's feeling the joint as she moves her arm. He put his right hand under her arm, on her arm, not quite at the elbow, and he said now bring your arm up. She brought her arm up and she brought it about shoulder high. Dr. Czarkowski asked if that was as high as it would go. Jackie said, 'Yes, it hurts.' He took his arm underneath and then forcibly pushed her arm all the way up to her head and, when he did, she yelled.... Jackie turned white."

Record, pp. 44–45. Whyde stated in her affidavit that after she had raised her arm as high as she could on Czarkowski's request, he asked if she could move it any higher. When she indicated that she could not because "it pulls and I feel it hurting in there", Czarkowski "forcefully and very quickly" pushed her arm straight up. Record, p. 41.

However, in Czarkowski's deposition, he testified he did not perform any passive motion on Whyde during the examination. He stated several times that he did not assist in any motion of her arm. Specifically, Czarkowski stated "I do not recall moving her shoulder. I do recall the visit and the only thing I observed was her active range of motion [self-induced motion] and the patient underwent palpation to determine where she was tender." Record, p. 87. As a result, there are facts in dispute which would dispose of this litigation and, therefore, summary judgment was improper. *See Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 318. Accordingly, the trial court erred in granting Czarkowski's motion for summary judgment.

For the foregoing reasons, the trial court's judgment is reversed, and this cause is remanded for further proceedings not inconsistent with this decision.

REVERSED AND REMANDED.

RUCKER and HOFFMAN, JJ., concur.