**Jack PERRY, Appellant–Plaintiff,**

v.

**William DRIEHORST, M.D., Southside Orthopaedic Surgery, Appellees–Defendants.**

**No. 49A02–0307–CV–633.**

Court of Appeals of Indiana.

May 21, 2004.

Rehearing Denied July 15, 2004.

James E. Ayers, Linden, IN, Attorney for Appellant.

Steven J. Cohen, Indianapolis, IN, Attorney for Appellees.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Jack Perry ("Perry") appeals from the trial court's order granting Defendants–Appellees' William Driehorst, M.D.("Dr. Driehorst") and Southside Orthopaedic Surgery ("Southside") motion for summary judgment in this medical malpractice action.

We affirm.

*ISSUE*

The sole issue presented for our review is whether the trial court correctly granted Dr. Driehorst and Southside's motion for summary judgment.

*FACTS AND PROCEDURAL HISTORY*

On April 27, 1996, Perry went to the Lafayette Home Hospital Emergency Department complaining of sudden pain in his lower back after bending over and getting into a truck at Western Publishing in Crawfordsville, Indiana. Perry saw two surgeons before being referred to Dr. Driehorst in December of 1996 by an agent of Liberty Mutual, Western Publishing's worker's compensation carrier. Dr. Driehorst, a specialist in pain management and nonoperative management of spinal disorders, was working at Southside at that time.

Dr. Driehorst examined Perry on December 17, 1996, and sent a letter to Liberty Mutual outlining some of Perry's treatment options. Dr. Driehorst recommended, among other things, a lumbar discography. A Liberty Mutual agent called Southside and requested that Perry undergo a discogram. Southside contacted St. Francis Hospital in Beech Grove, and Perry's discogram was scheduled with Dr. Sequeira, a radiologist. That discogram was conducted on January 13, 1997. Dr. Sequeira's report included the impression that there was positive discography at both the L4–5 and L5–S1 levels.

On February 4, 1997, Dr. Driehorst wrote a follow-up letter to Liberty Mutual. In that letter Dr. Driehorst recommended that Perry postpone any surgery until he could no longer work on a daily basis. Dr. Driehorst did note that the results of the discogram indicated that the discs at L4–5 and L5–S1 were pain generators for Perry.

On March 28, 1997, Perry was evaluated by Dr. J. Paul Kern. Dr. Kern agreed with Dr. Driehorst that Perry was not a surgical candidate. Dr. Kern made further recommendations regarding Perry's treatment.

Dr. Driehorst was deposed by attorneys for Perry and Western Publishing on October 22, 1998, as part of Perry's claim filed with the Indiana Worker's Compensation Board. During the deposition, Dr. Driehorst testified about Perry's January 13, 1997 discogram. Dr. Driehorst testified that the discogram was "sort of a suboptimal test" and was "flawed" because it was not done the best way with the use of a control disc. A control disc is a non-suspicious disc that is injected by the radiologist to determine the validity of a patient's complaint of pain. Dr. Driehorst stated that it was unfortunate that a control disc had not been tested, and that he was uncertain why it had been omitted.

On November 14, 2000, Perry was evaluated for his back pain by Dr. John Gorup. Dr. Gorup noted that Perry refused to have another discogram.

Perry was admitted to St. Elizabeth Medical Center in Lafayette, Indiana, on December 1, 2000. Dr. Gorup performed an anterior interbody fusion with instrumentation at the L4–S1 levels.

Perry had filed his proposed complaint with the Department of Insurance on November 17, 1999, against Dr. Driehorst, Dr. Sequeira, and Southside. The Medical Review Panel entered its opinion on June 17, 2002, unanimously deciding that the evidence did not support the conclusion that the defendant failed to meet the applicable standard of care and that such conduct was not a factor of the resultant damages.

On September 14, 2002, Perry filed his complaint against Dr. Driehorst, Dr. Sequeira, and Southside in the Marion County Superior Court. On December 9, 2002,

Dr. Driehorst and Southside filed their motion for summary judgment. On January 16, 2003, Dr. Sequeira filed his motion for summary judgment. On March 1, 2003, Dr. Sequeira was also deposed regarding the January 13, 1997 discogram. He testified that it is the responsibility of the referring physician, not the radiologist, to designate the levels to be tested. Dr. Sequeira testified that Perry had pain with the procedure at both of the suspected levels. Perry filed his combined response on May 28, 2003. A hearing was held on the motions on June 18, 2003. The trial court granted the motions for summary judgment in favor of Dr. Driehorst, Southside, and Dr. Sequeira. Perry does not appeal the trial court's order granting summary judgment in favor of Dr. Sequiera. This appeal against Dr. Driehorst and Southside ensued.

### DISCUSSION AND DECISION

### STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. *Brown v. Banta,* 682 N.E.2d 582, 584 (Ind.Ct.App.1997) (citing *Stevenson v. Hamilton Mutual Insurance Company,* 672 N.E.2d 467 (Ind.Ct. App.1996)). We must determine whether there is a genuine issue of material fact, and whether the law has been correctly applied by the trial court. *Id.* Summary judgment is appropriate only if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. *Id.* Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. *Id.* A trial court's grant of summary judgment is clothed with the presumption of validity, and the appellant bears the burden of demonstrating that the trial court erred. *Id.*

To maintain a claim of medical malpractice, the plaintiff must show (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty by allowing conduct to fall below a set standard of care, and (3) a compensable injury proximately caused by defendant's breach of the duty. *Whyde v. Czarkowski,* 659 N.E.2d 625, 627 (Ind.Ct.App.1995). To determine whether the physician's conduct fell below the legally prescribed standard of care, the plaintiff-patient must present expert testimony to establish what a reasonably prudent physician would or would not have done in treating the plaintiff. *Id.* Failure to provide expert testimony will usually subject the plaintiff's claim to summary disposition. *Id.* However, a plaintiff is not required to present expert testimony in those cases where deviation from the standard of care is a matter commonly known to lay persons. *Id.* This exception is based upon the doctrine if *res ipsa loquitur* where the deficiency of the physician's conduct "speaks for itself." *Id.*

Dr. Driehorst and Southside designated the plaintiff's complaint and the opinion of the medical review panel in support of their motion for summary judgment. Perry designated his submittal to the medical review panel, certain portions of Dr. Driehorst's deposition, a letter from the Liberty Mutual agent to Dr. Driehorst, and certain portions of Dr. Sequeira's deposition.

Dr. Driehorst and Southside satisfied their burden of showing no genuine issue

of material fact when they designated the opinion of the medical review panel finding that Dr. Driehorst had met the applicable standard of care. Without a breach of the standard of care Dr. Driehorst would be entitled to judgment as a matter of law. *See id.* at 628. The nonmovant, Perry, then was obligated to present expert testimony on the standard of care element of malpractice. *See Kennedy v. Murphy,* 659 N.E.2d 506, 507 (Ind.1995).

Perry contends that Dr. Driehorst's deposition testimony, designated to the trial court, wherein Dr. Driehorst stated that a valid discogram would have aided in diagnosis and treatment, and that the discogram performed on Perry was flawed, is sufficient to meet his burden of presenting expert testimony on the standard of care element. He alleges that Dr. Driehorst should have submitted expert testimony on the standard of care if he had intended to rely upon anything other than his deposition testimony.

▪ Perry is mistaken about the burden of coming forward with expert medical testimony in this type of situation. In medical malpractice cases, it is well-established that when the medical review panel opines that the plaintiff has failed to make a prima facie case, he or she must then come forward with expert medical testimony to rebut the panel's opinion in order to survive summary judgment. *Banta,* 682 N.E.2d at 584. Furthermore, a unanimous opinion of the panel that the defendant did not breach the applicable standard of care is sufficient to negate the existence of a genuine issue of material fact. *McGee v. Bonaventura,* 605 N.E.2d 792, 794 (Ind.Ct. App.1993). The plaintiffs cannot prevail in a medical malpractice action or any other tort claim where the undisputed evidence demonstrates that the defendant did not breach any duty owed to the plaintiff. *Id.*

Additionally, in a medical malpractice case, substantive law requires expert opinion as to the existence and scope of the standard of care which is imposed upon medical specialists and as to whether particular acts or omissions measure up to the standard of care. *Id.* Before the trier of fact may confront the factual question of negligence the issue must be presented and placed in controversy by reference to expert opinion. *Id.*

▪ An affidavit which establishes an expert's credentials, states that the expert has reviewed the relevant medical records, and sets forth the expert's conclusion that the defendants violated the standard of care in their treatment which in turn caused the complained of injury, is sufficient to demonstrate the existence of a material fact, thus making summary judgment inappropriate. *Bunch v. Tiwari,* 711 N.E.2d 844, 850 (Ind.Ct.App.1999).

▪ Physicians are required to possess and exercise that degree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances. *McIntosh v. Cummins,* 759 N.E.2d 1180, 1184 (Ind. Ct.App.2001). In a medical malpractice action, an opposing affidavit submitted to establish that a defendant doctor breached the applicable standard of care must set forth that the expert is familiar with the proper standard of care under the same or similar circumstances, what that standard of care is, and that the defendant's treatment of the plaintiff fell below that standard. *Id.*

We recognize that in *Whyde,* a panel of this court found that a defendant-physician's deposition testimony provided the applicable standard of care. However, in that case, the panel of this court did not squarely address the issue of whether a

defendant-physician's deposition testimony was sufficient to withstand a motion for summary judgment. The defendant-physician in that case implicitly accepted the patient's position that his deposition testimony could be used as the sole expert testimony regarding the standard of care. 659 N.E.2d at 629, n. 3. Most cases hold that because of the complex nature of medical diagnosis and treatment, expert testimony is generally required to establish the applicable standard of care. *Desai v. Croy,* 805 N.E.2d 844, 850 (Ind.Ct.App. 2004); *Simms v. Schweikher,* 651 N.E.2d 348, 350 (Ind.Ct.App.1995). If medical expert opinion is not in conflict regarding whether the physician's conduct met the requisite standard of care, there are no genuine triable issues. *Id.* The nonmovant must present expert medical testimony to rebut the unanimous decision of the medical review panel.

Further, we acknowledge the decision of a panel of this court in *Summit Bank v. Panos,* 570 N.E.2d 960 (Ind.Ct.App.1991). In *Panos,* a panel of this court held that the defendant-physician's deposition testimony was sufficient to stave off a motion for summary judgment. The panel held that the appropriate standard of care was established by the physician's deposition testimony. 570 N.E.2d at 967–968.

However, in the present case, unlike in *Panos,* the designated portions of Dr. Driehorst's deposition testimony established why discograms are done, why a control disc is often tested, and the results of Perry's discogram. While Dr. Driehorst's deposition testimony included his assessment that the test as conducted on Perry was suboptimal and flawed, it did not establish what the standard of care was, or that Dr. Driehorst's conduct fell below the requisite standard of care.

In *Bougher v. Choi,* 562 N.E.2d 1289 (Ind.Ct.App.1990), the plaintiff alleged that the physician had negligently injured the patient's nerve during carpal tunnel surgery. The medical review panel determined that the physician did not breach the standard of care. The patient offered the physician's deposition testimony to rebut the physician's motion for summary judgment. The physician had testified that if he cut the nerve, he should not have done so. A panel of this court held that without evidence of the standard of care, the physician's statement was merely an acknowledgement that a cut nerve is an unintended outcome not properly chargeable without some evidence of a negligent act. 562 N.E.2d at 1291. Similarly, in the present case, the portions of Dr. Driehorst's deposition that were designated amount to an acknowledgement that the testing of a control disc was inexplicably omitted from his testing order, and would have aided in diagnosis.

Because we have determined that summary judgment was properly granted on the issue of standard of care, we do not address the issue of proximate cause. *Cf. Simms,* 651 N.E.2d at 350. (court on review need not decide merits of patient's legal claim given her failure to defend against motion for summary judgment by presenting expert medical testimony on standard of care.).

## CONCLUSION

The trial court correctly granted Dr. Driehorst and Southside's motion for summary judgment. After Dr. Driehorst and Southside designated the medical review panel's unanimous decision that Dr. Driehorst had not violated the standard of care, Perry was required to present expert medical testimony on the appropriate standard of care, and how Dr. Driehorst's conduct fell below that standard. Perry's designated evidence in response to the motion

for summary judgment did not meet that requirement.

Affirmed.

KIRSCH, C.J., and FRIEDLANDER, J., concur.