**HOWARD REGIONAL HEALTH SYSTEM d/b/a Howard Community Hospital, Charles G. Marler, M.D., and Community Family Health Center, Appellants–Defendants,**

v.

**Jacob Z. GORDON b/n/f Lisa Gordon, Appellee–Plaintiff.**

No. 34A02–0902–CV–179.

Court of Appeals of Indiana.

April 16, 2010.

---

Milford M. Miller, Miller Murphy, LLP, Fort Wayne, IN, Bryan H. Babb, Kelly M. Scanlan, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellants.

John F. Muller, Montross Miller Muller Mendelson & Kennedy, Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Jacob Gordon suffers from a number of serious disorders that could have been caused by substandard medical care at the time of his birth. After Jacob's mother

(hereinafter "Gordon") commenced a medical malpractice action, evidence was requested from Howard Community Hospital, where Jacob was born. A year and a half after Gordon's request, the Hospital responded with an affidavit stating some of the evidence was missing. Gordon filed a motion for partial summary judgment against the Hospital for spoliation of evidence, and the trial court granted that motion.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Jacob was delivered by emergency cesarean section at about 2:30 p.m. on January 7, 1999 at Howard Community Hospital. Gordon contacted an attorney to review the medical care the Hospital provided, then filed with the Department of Insurance a proposed malpractice complaint for damages against the Hospital. She later amended the complaint to include the doctor who delivered Jacob, the doctor who cared for him after his birth, and the Community Family Health Center.

Gordon's counsel requested evidence from the Hospital. The Hospital responded eighteen months later with an affidavit stating some of the records could not be located. The missing records included nursing and narrative notes from 7:45 p.m. January 6 through 2:00 p.m. January 7; labor flow records from 6:00 a.m. through 2:00 p.m. January 7; peri-operative nurses' notes from the c-section on January 7; and fetal heart monitor strips from 2:50 a.m. through 2:00 p.m. January 7.

Gordon retained a neonatal doctor to review the records that were provided and determine whether the care the obstetri-

cian provided to Jacob and Gordon conformed to medical standards. The doctor could not provide an opinion because of the missing records.

Gordon moved for partial summary judgment on whether the Hospital had a duty to preserve the evidence, whether it breached the duty, and whether the breach made it impossible for Gordon to pursue the malpractice action against the obstetrician. We accepted jurisdiction over this interlocutory appeal.

## DISCUSSION AND DECISION

The standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lean v. Reed*, 876 N.E.2d 1104, 1107 (Ind.2007). In determining whether summary judgment is appropriate, we construe all facts and reasonable inferences in favor of the nonmoving party. *Jackson v. Scheible*, 902 N.E.2d 807, 809 (Ind.2009). Our review is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). We must carefully review a decision on summary judgment to ensure a party is not improperly denied its day in court. *Id.* at 974.

### 1. *Subject Matter Jurisdiction*

■ The Hospital argues the trial court had no subject matter jurisdiction to hear Gordon's spoliation claim because the Medical Malpractice Act, Ind.Code ch. 34–18–8, requires a proposed complaint be presented to a medical review panel and the panel give its opinion before an action against a

---

1. We heard oral argument March 3, 2010, in Indianapolis. We commend counsel for the quality of their oral advocacy.

health care provider may be commenced in court.

■ Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings before the court belong. *Hubbard v. Columbia Women's Hosp. of Indianapolis,* 807 N.E.2d 45, 50 (Ind.Ct.App.2004), *reh'g denied.* Lack of subject matter jurisdiction may be raised by the parties or the court at any time, including on appeal. *Id.* We must determine whether the claim falls within the general scope of authority conferred on the court by the Indiana Constitution or by statute. *Id.*

The trial court had jurisdiction to hear Gordon's spoliation claim.[2] In *H.D. v. BHC Meadows Hosp., Inc.,* 884 N.E.2d 849 (Ind.Ct.App.2008), *reh'g denied, trans. denied* 898 N.E.2d 1226 (Ind.2008), we addressed whether a health care provider's negligent or reckless dissemination of a patient's confidential information to members of the general public was within the purview of the Medical Malpractice Act. In concluding it was not, we discussed the boundaries of the Act as defined by prior decisions.

For example, in *Winona Memorial Fdn. of Indianapolis v. Lomax,* 465 N.E.2d 731, 733 (Ind.Ct.App.1984), *reh'g denied,* we determined a patient's claim against a health care provider stemming from a slip and fall was not a medical malpractice claim that had to be sent to a medical review panel. We noted the Medical Malpractice Act was the legislative response to a "crisis in the availability of medical malpractice insurance" that was in turn threatening the availability of health care services to the public. *Id. at* 739. We found no indication "the legislature was aware of any difficulties of health care providers in obtaining general liability insurance coverage for ordinary non-medical accidents on their premises." *Id.*

■ We also addressed the Act's requirement that a complaint be submitted to a medical review panel "with the sole duty of expressing its expert opinion on whether the defendant acted within the appropriate standard of care." *Id.* at 740. The "appropriate standard of care" about which the medical review panel is obliged to express its expert opinion is a medical standard, and therefore does not encompass non-medical concerns such as retention of records: "The standard of care is the degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which the physician belongs, acting under the same or similar circumstances." *Whyde v. Czarkowski,* 659 N.E.2d 625, 630 (Ind.Ct.App.1995), *trans. denied.* In *Lomax,* we held matters such as the maintenance of reasonably safe premises are within the common knowledge and experience of the average person, and thus the health care providers who make up the medical review panel under the Act are no more qualified as experts on such matters than the average juror. 465 N.E.2d at 740.

■ In *Collins v. Thakkar,* 552 N.E.2d 507, 510–511 (Ind.Ct.App.1990), *trans. denied,* we found the General Assembly intended to

> exclude from the legislation's purview conduct of a provider unrelated to the promotion of a patient's health or the

---

**2.** Because we find the spoliation claim is outside the coverage of the Medical Malpractice Act, we need not address Gordon's alternative argument the trial court could hear it pursuant to Ind.Code § 34–18–8–7 as a preliminary determination of an affirmative defense or issue of law or fact.

provider's exercise of professional expertise, skill or judgment.

\* \* \*

The legislature's establishment of a medical review panel, the sole purpose of which is to provide an expert determination on the question of whether a provider complied with the appropriate standard of care, suggests that the scope of the Act is likewise confined to actions premised upon the exercise of professional judgment.

Therefore, "when plaintiffs articulate claims for ordinary negligence, unrelated to the provision of medical care or treatment, those claims do not fall within the scope of the Medical Malpractice Act." *H.D.*, 884 N.E.2d at 855.

After reviewing those decisions, the panel in *H.D.* concluded a therapist's act of sending a patient's confidential information without taking precautions to "ensure that the materials are discreetly received by the intended recipient" would not necessitate consideration by a medical review panel. *Id.* As the plaintiffs had articulated claims of ordinary negligence and similar claims, the trial court erred when it dismissed the claims for lack of subject matter jurisdiction. *Id.* at 856.

Like the patient in *Lomax*, whose claim was based on a slip and fall, and thus was not a medical malpractice claim that had to be sent to a medical review panel, and like the plaintiff in *H.D.*, whose claim was one of "ordinary negligence, unrelated to the provision of medical care or treatment," *id.*, Gordon's claim was premised on the tort of spoliation of evidence, and was unrelated to "the promotion of a patient's health or the provider's exercise of professional expertise, skill or judgment." *Collins*, 552 N.E.2d at 510. *See also Van Sice v. Sentany*, 595 N.E.2d 264, 266 (Ind.Ct. App.1992) (The Act applies to conduct "curative or salutary in nature, by a health care provider acting in his or her professional capacity," and excludes conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment.").

■ The Act is "a precisely tailored response to the difficulties encountered by health care providers in obtaining professional liability insurance," so it does not encompass "the sort of liability a provider is exposed to generally, whether that be liability arising as a consequence of the condition of the health care provider's premises or a criminal act." *Id.* Gordon was not obliged to present her spoliation claim to a medical review panel that would determine whether the loss of the records was outside the appropriate standards of medical care. *See* Ind.Code § 34–18–10–22 (panel's "sole duty" is to express its expert opinion as to whether the evidence supports the conclusion the defendant "acted or failed to act within the appropriate standards of care").

The Hospital relies on *Popovich v. Danielson*, 896 N.E.2d 1196, 1202 (Ind.App. 2008), *trans. denied* 915 N.E.2d 987 (Ind. 2009), which it characterizes as holding a medical review panel needed to review a claim concerning the provider's contractual obligation to accurately report medical findings and observations in medical records. *Popovich* is distinguishable. Popovich's complaint alleged, among other things, defamation and breach of contract, but we found both fell under the Medical Malpractice Act.

Popovich asserted a doctor defamed her when he included in his medical report that Popovich was injured because she was drunk and not wearing her seatbelt. The doctor also reported that Popovich displayed disruptive behavior in the emergency room. Popovich asserted the doctor deliberately misrepresented and falsified

her physical and mental conditions because Popovich rejected him as her attending physician. We determined the allegation the doctor should not have concluded, after reading Popovich's medical chart and without doing his own assessment, that Popovich crashed while drunk, questioned his exercise of professional expertise, skill, or judgment, so it fell under the Medical Malpractice Act. "The information he recorded, presumably, was based on his review of her chart, his assessment of her injuries, and his exercise of professional skill and judgment to determine what to include in the report." *Id.* at 1203 n. 4.

Popovich also alleged the doctor breached a contractual obligation to accurately and correctly report necessary medical findings and observations in medical records.

> This claim, like the defamation claim, depends on the extent to which Danielson relied on his review of Popovich's chart prior to his interaction with her and the extent to which such reliance was reasonable. Thus, it needs to be addressed by persons acquainted with the standard practice of specialists called to assist with on-going emergency room cases ... and it falls under the Malpractice Act.

*Id.* at 1203.

The resolution of Gordon's spoliation claim, unlike Popovich's tort and contract claims, does not involve any medical provider's "exercise of professional expertise, skill, or judgment." *See Van Sice*, 595 N.E.2d at 266. The spoliation claim does

not depend on the quality of the care Jacob received or the professional judgment of any provider, but rather will be resolved by determining whether the Hospital had a duty to retain the records and whether it breached that duty. The spoliation claim was outside the Medical Malpractice Act and the trial court had jurisdiction to hear it.

### 2. *Availability of Private Right of Action for Loss of Medical Records*

■ The trial court correctly determined the Hospital had a "duty imposed by statute," (App. at 201), to maintain its medical records and breached its duty. A hospital is required by Ind.Code § 16–39–7–1 to maintain its health records for seven years. If it violates that section it "commits an offense for which a board may impose disciplinary sanctions against the provider under the law that governs the provider's licensure, registration, or certification." *Id.*

■ We hold violation of Ind.Code § 16–39–7–1 is negligence *per se* and therefore a private action is available to Gordon.[3] Our Indiana Supreme Court recently explained in *Kho v. Pennington*, 875 N.E.2d 208 (Ind.2007), when violation of a statute is negligence *per se*. It noted Indiana courts "have a long and continuous history of recognizing negligence actions for statutory violations," *id.* at 212, and that the unexcused violation of a statutory duty is negligence *per se* "if the statute or ordinance is intended to protect the class

---

**3.** Ind.Code § 16–39–7–1(d) was added after Gordon brought this action. It states:

> A provider is *immune from civil liability for destroying or failing to maintain a health record in violation of this section* if the destruction or failure to maintain the health record occurred in connection with a disaster emergency as declared by the governor under IC 10–14–3–12 or other disaster, un-

less the destruction or failure to maintain the health record was due to negligence by the provider.

(Emphasis supplied.) This explicit statutory reference to *immunity* "from civil liability" indicates the legislature must have intended there was already "civil liability" from which a provider might sometimes be entitled to "immunity."

of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation." *Id.* at 213–14 (quoting *Plesha v. Edmonds ex rel. Edmonds,* 717 N.E.2d 981, 986 (Ind.Ct.App.1999), *reh'g denied, trans. denied* 735 N.E.2d 235 (Ind. 2000)). The fact that a statutory violation may result in a separate harm or penalty, as does violation of the statute governing retention of medical records, does not prevent an action for damages resulting therefrom. *Id.* at 214.

In *Kho,* a plaintiff filed a proposed malpractice complaint with the Indiana Department of Insurance. Before any consideration by a medical review panel, she also filed her complaint in trial court. She named Dr. Kho as a defendant. He moved for summary judgment alleging he had not provided medical care to the decedent, and he was dismissed from the lawsuit by stipulation.

Dr. Kho then sued the malpractice claimant, her attorney, and the attorney's law firm for emotional suffering, embarrassment, undue negative publicity, injury to his reputation, and mental distress because he was falsely named in the malpractice lawsuit. Our Indiana Supreme Court determined violation of the confidentiality provision of Indiana Code § 34–18–8–7 gives rise to a private action for damages. That section provides a malpractice claimant may commence an action in court at the same time the proposed complaint is being considered by a medical review panel, but the "complaint filed in court may not contain any information that would allow a third party to identify the defendant." Ind.Code § 34–18–8–7.

The Court first found "the purpose and function of the defendant identity confidentiality requirement of Indiana Code § 34–18–8–7(a)(1) supports the doctor's cause of action for negligence." *Kho,* 875 N.E.2d at 213. It observed that the confidentiality requirement of section 34–18–8–7 serves to "disfavor subjecting a health care provider to public accusations of medical malpractice until after such claim is presented to a medical review panel." *Id.* (quoting *Schriber v. Anonymous,* 848 N.E.2d 1061, 1065 n. 3 (Ind.2006)). That was the risk of harm against which the statute is directed.[4] *Id.*

Gordon is within the class of persons the record retention statute is intended to protect and was subjected to the type of harm expected to occur as a result of its violation.[5] Ind.Code § 16–39–1–1(c) requires a provider to supply to a patient, on request, the health records it has concerning the patient. It is apparent for a variety of reasons why a patient might want or need to have access to his or her medical records, and it is reasonably foreseeable that a patient could be harmed by a provider's failure to maintain the patient's records.

We find instructive the Illinois Supreme Court's analysis of a very similar situation in *Rodgers v. St. Mary's Hospital of Decatur,* 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616 (1992). There, Rodgers alleged the hospital failed to preserve for litigation all x-rays taken of his wife, who had been a patient at the hospital for several days before she died there. Rodgers claimed the hospital's loss of an x-ray caused him to lose a malpractice suit he

---

**4.** The parties did not dispute that Dr. Kho was within the class of persons intended to be protected by that section. The Court found "[t]he nature of the damages sought by the doctor falls within the risk of the type of harm against which the statute is directed," as Dr.

Kho alleged damages including embarrassment, undue negative publicity, and injury to his reputation. 875 N.E.2d at 214.

**5.** The Hospital does not argue otherwise.

had filed earlier against his wife's radiologists.

The Court held Rodgers had a private cause of action under the Illinois X–Ray Retention Act and stated a claim under the Act. Rodgers brought a medical malpractice action against his wife's obstetricians, her radiologists, and the hospital. The circuit court entered summary judgment in favor of the hospital and Rodgers did not appeal. Rodgers had filed a separate complaint for damages against the hospital alleging that the hospital breached its statutory duty to preserve for five years all the x-rays it had taken of his wife. In his complaint, Rodgers alleged his wife's death was caused by a condition that appeared on an x-ray the hospital had a duty to preserve; the hospital's failure to preserve the x-ray was a breach of its duty arising from the X–Ray Retention Act; and because the hospital did not preserve the x-ray, he could not prove his case against the radiologists.

The Court found the statute granted Rodgers "a private cause of action by implication." *Id.* 173 Ill.Dec. 642, 597 N.E.2d at 620. The Act generally required hospitals to retain x-rays as part of their regularly maintained records for a period of 5 years. The Illinois analysis of "implication by a statute of a private right of action" is similar to our negligence *per se* analysis; implication by a statute of a private right of action is appropriate when: "(1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act." *Id.*

The Court found it "clear that the X–Ray Retention Act was designed to prevent the loss of evidence that may be essential to the pursuit or defense of a medical malpractice claim." *Id.* Therefore, Rodgers, as a plaintiff with a malpractice claim, was a member of the class for whose benefit the statute was enacted, and his injury is one the statute was designed to prevent. *Id.*

The Hospital contends the disciplinary sanctions authorized by Ind.Code § 16–39–7–1 amount to an "administrative remedy" that forecloses a private right of action by Gordon. The Hospital notes we have consistently held that "where the legislature expressly provides for enforcement of a statute by means other than a private right of action, a private right of action will not be found." *Kimrey v. Donahue,* 861 N.E.2d 379, 382 (Ind.Ct.App.2007), *trans. denied* 869 N.E.2d 459 (Ind.2007).

The *Kho* Court acknowledged and rejected a similar argument. There, the malpractice claimant argued the only available remedy for filing the complaint in contravention of the statute was dismissal of the lawsuit without prejudice, citing *Hubbard,* 807 N.E.2d at 51–52. In *Hubbard* we stated the proper course of action when a plaintiff fails to comply with the Act is for the trial court to dismiss the complaint without prejudice, thereby allowing the plaintiff to refile after the medical review panel has issued its opinion. *Id.* at 51. But the *Kho* Court noted there was no issue presented or discussed in *Hubbard* regarding whether a statutory negligence action was available for such violation:

These rulings regarding the propriety of dismissing a malpractice complaint that specifically identified defendant health care providers contrary to statute are not relevant to whether such providers may thereafter assert a statutory negligence action against the malpractice claimant for such violation. Moreover, the mere dismissal of a complaint for malpractice filed in violation of the de-

fendant confidentiality requirement is wholly ineffectual to prevent or remedy the harm to a defendant physician's reputation that results from media coverage of the court filing.

*Kho,* 875 N.E.2d at 215.

It is apparent in the case before us that the statutory sanctions involving "the provider's licensure, registration, or certification," Ind.Code § 16–39–7–1(c), would similarly be "wholly ineffectual" to remedy the harm Gordon would suffer if the loss of records made it impossible to bring a malpractice action. The Illinois hospital in *Rodgers,* as does the Hospital in the case before us, argued the statute was "merely an administrative regulation to be enforced exclusively by the Department of Public Health." 173 Ill.Dec. 642, 597 N.E.2d at 619. The Court disagreed: "nothing in the statute suggests that the legislature intended to limit the available remedies to administrative ones ... and administrative remedies would not provide an adequate remedy to those injured by violations of the Act." [6] *Id.* It concluded a private cause of action was necessary to provide an adequate remedy for violations of the Act and was consistent with the underlying purpose of the Act. *Id.* 173 Ill.Dec. 642, 597 N.E.2d at 620–21.

We accordingly hold Ind.Code § 16–39–7–1 imposes on entities subject to the statute a duty to maintain their health records, and that a breach of that duty is negligence *per se.* The trial court correctly found the duty to retain medical records is imposed by statute.

### 3. *Availability of Third–Party Spoliation Claim*

On the facts before us, an action for third-party spoliation of evidence is available to Gordon. In *Gribben v. Wal–Mart Stores, Inc.,* 824 N.E.2d 349, 355 (Ind.2005), our Indiana Supreme Court held that first-party [7] intentional spoliation of evidence is not recognized in Indiana as an independent tort claim. Therefore, "if an alleged tortfeasor negligently or intentionally destroys or discards evidence that is relevant to a tort action, the plaintiff in the tort action does not have an additional independent cognizable claim against the tortfeasor for spoliation of evidence." *Id.*

That is because "[a]lready existing under Indiana law are important sanctions that not only provide remedy to persons aggrieved, but also deterrence to spoliation of evidence by litigants and their attorneys." *Id.* at 351. The Court noted intentional first-party spoliation of evidence may be used to establish an inference that the spoliated evidence was unfavorable to the party responsible. *Id.* Indiana Trial Rule 37(B) authorizes trial courts to respond to discovery violations with sanctions that may include ordering that designated facts be taken as established, prohibiting the introduction of evidence, dismissal of all or any part of an action, rendering a judgment by default against a disobedient party, and payment of reasonable expenses including attorney fees. Attorneys involved in destruction or concealment of evidence face penalties in-

---

**6.** As explained above, the Indiana legislature acknowledged there is civil liability for violation of our record retention statute when it enacted Ind.Code § 16–39–7–1(d) in order to provide immunity from that civil liability in some situations.

**7.** "First party" spoliation "refers to spoliation of evidence by a party to the principal litiga-

tion," and is distinguished from "third party" spoliation, which refers to spoliation by a non-party. *Gribben v. Wal–Mart Stores, Inc.,* 824 N.E.2d 349, 350 (Ind.2005). Gordon alleges third-party spoliation, as she alleges the Hospital lost evidence she needed in order to pursue an action against her obstetrician.

cluding disbarment. Finally, the destruction or concealment of evidence, or presentation of false testimony related thereto, may be criminally prosecuted as perjury or obstruction of justice. *Id.* at 351.

The *Gribben* decision responded to certified questions about first-party spoliation, and the Court accordingly declined to address third-party spoliation. But it said: "It may well be that the fairness and integrity of outcome and the deterrence of evidence destruction may require an additional tort remedy when evidence is destroyed or impaired by persons that are not parties to litigation and thus not subject to existing remedies and deterrence." *Id.* at 355.

In *Glotzbach v. Froman,* 854 N.E.2d 337, 339 (Ind.2006), our Indiana Supreme Court held no third-party spoliation of evidence action against an employer was available to an employee who was injured in a workplace accident to which the Workers' Compensation Act applied. But it noted this court had recognized a cause of action for third-party spoliation in *Thompson v. Owensby,* 704 N.E.2d 134 (Ind.Ct. App.1998), *trans. denied* 726 N.E.2d 304 (Ind.1999). In *Thompson,* we permitted a claim against a liability insurer for failing to preserve a dog-restraining cable the insurer collected after Thompson sued the owners of the dog that bit her: "Liability insurance carriers are no strangers to litigation, and it strains credulity to posit in a motion to dismiss that a liability carrier could be unaware of the potential importance of physical evidence." *Id.* at 137. It would "strain credulity" to at least the same extent to suggest a hospital might be unaware of the potential importance of its medical records to its patients, especially those patients whose medical care had a poor outcome.

The Hospital relies on *Glotzbach* and *Murphy v. Target Products,* 580 N.E.2d 687, 690 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* Both decisions are distinguishable, as both were premised on the absence of duty on the part of an employer to preserve evidence for the benefit of an employee. In *Murphy* we held "that at least in the absence of an independent tort, contract, agreement, or special relationship imposing a duty to the particular claimant, the claim of negligent or intentional interference with a person's prospective or actual civil litigation by the spoliation of evidence is not and ought not be recognized in Indiana." *Id.*

Murphy was injured in a workplace accident involving a power saw and alleged that his employer's failure to preserve the saw interfered with his prospective product liability claim against the manufacturer of the saw. *Id.* at 689. We determined there was "no common law duty on the part of an employer to preserve, for an employee, potential evidence in an employee's possible third party action." *Id.* at 690. *Murphy* does not control because, as explained above, the legislature has imposed on hospitals a duty to patients to retain their medical records. Ind.Code § 16–39–7–1.

In *Glotzbach,* our Supreme Court found no third-party spoliation claim was available, again on the basis there was no duty in the employer-employee context to preserve evidence. 854 N.E.2d at 339. A contract worker for an environmental waste services corporation sued the corporation for intentional spoliation of evidence he needed for his claim against the manufacturer of an "explosion-proof" electric pump that exploded when he was using it. Relying on *Murphy,* the Court said:

> [A]n employer will virtually always be aware of an injury occurring in the workplace. If that knowledge were sufficient to establish a special relationship, the practical effect would be that an

employer always has a duty to preserve evidence on behalf of its employee for use in potential litigation against third parties. This would directly conflict with *Murphy* as well as the law in most other states that have addressed the specific issue of a third-party spoliation claim by an employee against an employer based on evidence relevant to an industrial accident covered by worker's compensation.

*Id.* at 339–40.

The *Glotzbach* Court went on to note the policy considerations that are the controlling factor in declining to recognize spoliation as a tort under these circumstances. It noted, as it did in *Gribben*, that evidentiary inferences are not available as a remedy for or deterrent to third-party spoliation, but that many of the other remedies remain applicable. Criminal sanctions apply equally to third parties and first parties, sanctions under the Indiana Rules of Professional Conduct are available if attorneys for the third party are involved in the misconduct, and courts can issue contempt sanctions against non-parties who frustrate the discovery process by suppressing or destroying evidence. *Id.* at 341.

But the Court found the most significant policy reason not to allow a third party spoliation claim in that case was that "the employer is entitled to recover some of its worker compensation benefits if the employee can establish a product liability claim." *Id.* (citing Ind.Code § 22–3–2–13). "It is in the employer's interest to preserve evidence that may aid in pursuing these subrogation rights against the manufacturer." *Id.*[8] In the case of medical mal-

practice, by contrast, a health care provider might perceive the *absence* of evidence, and not its preservation, to be in its best interests.

As the Hospital in the case before us had a duty to retain the evidence it lost, this case is more like *Thompson* than *Murphy* or *Glotzbach* where there could be no spoliation because the employer had no duty to preserve evidence. Therefore, we hold an action for third-party spoliation of evidence is permissible under the facts of this case.

### 4. *Appropriateness of Summary Judgment*

■ Finally, the Hospital argues Gordon was not entitled to summary judgment because she did not establish a *prima facie* case of negligence. Specifically, it argues Gordon did not prove the loss of the records caused her harm and resulting damages that could be proved with reasonable specificity. We disagree, finding Gordon established the loss of the records was the proximate cause of the harm she alleges. As the partial summary judgment we are reviewing did not address damages, we find no error in that regard.

As for the Hospital's allegation Gordon did not prove damages, Gordon was explicit that she was seeking summary judgment only on "issues of liability and proximate causation" and that a hearing would be set on remaining damages issues. (App. at 21.) The trial court's ruling reflects its partial summary judgment did not address damages: it noted counsels' agreement that "should summary judgment be en-

---

**8.** The *Glotzbach* decision was also premised in part on the concern that "the extent of the duty to preserve the evidence raises operational issues for the employer. Without a strong showing of need, we should not impose an obligation to retain useless equipment indefinitely or to refrain from repairing equip-

ment necessary to conduct the employer's business." 854 N.E.2d at 341–42. Permitting Gordon's action does not implicate that concern—the Hospital is already required by statute to retain its records, so no such "operational issues" are raised.

tered, a separate hearing on damages would be required." (*Id.* at 200.) It concluded the Hospital, by failing to provide the medical records for "the critical period of time from the early morning hours of January 7, 1999 until the actual surgery[,] created a significant gap in the records" needed to allow a factfinder to determine whether the care provided to Gordon met the relevant standard. (*Id.* at 201.)

It is obvious the summary judgment for Gordon was limited to the Hospital's liability for spoliation and did not address the specific amount of Gordon's damages. We decline the Hospital's invitation to hold summary judgment is improper because a plaintiff has not established "an ability to prove damages with reasonable specificity," (Reply Br. of Appellants at 16), when it is apparent from the summary judgment order that damages were to be determined in a separate proceeding.

 Even if Gordon was obliged to demonstrate in her motion for summary judgment on liability and causation that there was a genuine issue of fact as to damages, she adequately did so; she alleged she could not bring her malpractice claim without the missing records and she presented evidence in support of the allegation.

 Spoliation of evidence is a tort claim based on a breach of duty to preserve evidence, and a plaintiff's inability to bring a cause of action is typically the "damage" resulting from a breach of duty to preserve evidence. *See, e.g., Humana Worker's Comp. Services v. Home Emergency Services, Inc.,* 842 So.2d 778, 781 (Fla.2003): "The damage that flows from such a breach is the resulting inability to prove a cause of action." That court noted the plaintiff's "spoliation claim seeks compensation not for the bodily injury he sustained in falling from the ladder but, rath-er, for his loss of a probable expectancy of recovery in the underlying suit." *Id.*

We acknowledge the inherent difficulty of determining damages in third-party spoliation claims:

> Proving damages in a third-party spoliation claim becomes highly speculative and involves a lawsuit in which the issue is the outcome of another hypothetical lawsuit. The jury must somehow find all the elements of a product liability case, immediately determining whether a product defect caused the injury, as opposed to inadequate maintenance, or other intervening events. The jury would be asked to determine what the damages would have been had the evidence been produced and what the collectability of these damages would have been. We think this exercise often could properly be described as "guesswork."

*Glotzbach,* 854 N.E.2d at 341.

While this is a concern, we decline to hold it precludes a third-party spoliation claim under any circumstances. That result would leave an unscrupulous health care provider or insurer with no disincentive to destroy evidence that could later subject it to civil liability:

> [C]ourts have long recognized the need [in spoliation cases] to remedy a wrong despite the fact that a proper award of damages is difficult to determine.... Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean the more grievous the wrong done, the less likelihood there would be of a recovery.

*Smith v. Atkinson,* 771 So.2d 429, 436 (Ala.2000), *reh'g denied.*

In *Smith,* the insurer argued a plaintiff, before bringing a spoliation action against a third party, must first pursue the underlying cause of action and be denied recovery. The court disagreed:

> If we use the summary-judgment standard as a guide, there will be no need for a plaintiff to waste valuable judicial resources by filing a futile complaint and risking sanctions for filing frivolous litigation. The plaintiff can rely upon either a copy of a judgment against him in an underlying action *or upon a showing that, without the lost or destroyed evidence, a summary judgment would have been entered for the defendant in the underlying action.*

*Id.* at 434 (emphasis supplied). *See also Boyd v. Travelers Ins. Co.,* 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 271 (1995) (plaintiff must "allege sufficient facts to support a claim that the loss or destruction of the evidence caused the plaintiff *to be unable to prove* an underlying lawsuit")[9] (emphasis supplied), *reh'g denied.*

 While damages was not an issue before the court on Gordon's motion for partial summary judgment, proximate cause was. Gordon alleged in her spoliation count that "as a direct and proximate result of" the Hospital's spoliation, Jacob "is unable to adequately pursue his claims for medical negligence." (App. at 8.) In its summary judgment order the trial court found the loss of the records created a "significant gap" in the records that would prevent a medical panel or factfinder from determining whether the care provided to Jacob and his mother met the relevant standard. (*Id.* at 201.)

 Gordon was entitled to summary judgment on the question whether the loss of the records was the proximate cause of the damage she suffered in the form of inability to prove a lawsuit against the obstetrician. A plaintiff must show that an injury proximately resulted from a breach of a duty. Therefore, in a spoliation action, a plaintiff must show the loss or destruction of the evidence caused her to be unable to prove an underlying lawsuit. *Boyd,* 209 Ill.Dec. 727, 652 N.E.2d at 271. She need not show that, but for the loss or destruction of the evidence, she would have prevailed in the underlying action: "This is too difficult a burden, as it may be impossible to know what the missing evidence would have shown." *Id.* n. 2. A plaintiff must demonstrate, however, that but for the defendant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit. *Id.* In other words, if the plaintiff could not prevail in the underlying action even with the lost or destroyed evidence, then the defendant's conduct is not the cause of the loss of the lawsuit. This requirement prevents a plaintiff from recovering where it can be shown that the underlying action was meritless. *Id.*

Boyd's complaint alleged Travelers not only lost a Coleman heater that injured him when it exploded, but did not test it to determine the cause of the explosion. That deprived Boyd of the key piece of evidence in his products liability lawsuit against Coleman—the product itself. Boyd claimed that, as a result, no expert could testify without doubt whether the heater was defective or dangerously designed. Those allegations were sufficient to support the theory that Travelers' loss of the heater caused Boyd to be unable to prove his suit against Coleman. *Id.*

---

9. We noted that statement from *Boyd* in our *Thompson* decision, where the parties limited their arguments to the question whether the insurer had a duty to preserve evidence. 704 N.E.2d at 138 n. 1.

In *Smith,* 771 So.2d at 434, the court acknowledged that not every piece of lost or destroyed evidence should lead to a cause of action for negligent spoliation. But where the loss of evidence "defeats any chance of the plaintiff's recovering in the underlying action, we conclude that the plaintiff deserves recourse." *Id.* The defendant's breach "must be the proximate cause of the plaintiff's inability to file, or to win, the underlying lawsuit." *Id.* Therefore, for a plaintiff to show proximate cause, the trier of fact must determine the lost or destroyed evidence was so important to the plaintiff's claim in the underlying action that without that evidence the claim did not survive or would not have survived a motion for summary judgment. *Id.*

This can be established by a rebuttable presumption: "The plaintiff can rely upon ... a showing that, without the lost or destroyed evidence, a summary judgment would have been entered for the defendant in the underlying action." *Id.* Once a plaintiff has established that the third party had knowledge of the underlying action or potential action, that the third party assumed control over the evidence, and that the lost or destroyed evidence was "vital" to his claim in the underlying action or potential action, a rebuttable presumption arises in favor of the plaintiff. *Id.* at 435.

This presumption "merely selects which of two parties—the innocent or the negligent—will bear the onus of proving a fact whose existence or nonexistence was placed in greater doubt by the negligent party." *Id.* (quoting *Welsh v. United States,* 844 F.2d 1239, 1249 (6th Cir.1988)). The presumption affects the burden of proof by imposing on the party against whom it operates the burden of proving the nonexistence of the presumed fact. *Id.* The presumed fact is that the plaintiff would have prevailed in the underlying action but for the loss or destruction of the evidence by the third-party spoliator. The third party can overcome the presumption by producing evidence showing that the plaintiff would not have prevailed in the underlying action even if the lost or destroyed evidence had been available.[10] *Id.*

We find Gordon is entitled to the benefit of that presumption, and the Hospital did not rebut it. Gordon was therefore entitled to partial summary judgment on proximate cause.

---

10. The court provided this example: ·
[A]ssume that the plaintiff in a products-liability action alleges that the front wheel of an automobile separated from the vehicle during operation and that the separation caused a serious accident. Further assume that the garage to which the vehicle was towed was given notice of a pending products-liability action against the manufacturer of the vehicle and voluntarily assumed responsibility for the vehicle, as well as for the separated wheel; and that before the vehicle could be inspected the garage, through inadvertence, sold the vehicle and the wheel for salvage, destroying all relevant evidence and making it certain that the products-liability claim could not survive a summary-judgment motion. In a negligent-spoliation action against the garage, the jury would be instructed to presume that the plaintiff would have prevailed on his products-liability claim against the manufacturer of the vehicle. However, if, for example, the garage produced an eyewitness who testified that the wheel did not separate from the vehicle until after the impact, or that the plaintiff had been driving recklessly before the accident and through his own recklessness had caused the accident, then that testimony would absolve the defendant garage from liability for its spoliation of the evidence if the jury determined that on his products-liability claim the plaintiff would not have prevailed even if the evidence had not been lost or destroyed.
771 So.2d at 435–36.

Gordon alleged sufficient facts to support her motion for summary judgment on the issues of liability and proximate causation, and she was not obliged to proceed with the underlying medical malpractice action in order to show the potential amount of damages before bringing a spoliation action. We affirm the trial court.

Affirmed.

KIRSCH, J., and DARDEN, J., concur.